The PRESIDENT, DIRECTORS & COMPANY of the FARMERS'
and MECHANICS' BANK of DELAWARE,

*vs.*

WILLIAM POLK, THOMAS TOWNSEND, WILLIAM MOORE, JR.,
PETER G. WOOTTEN, ISAAC COOPER, HENRY BACON,
AND GEORGE PARKER AND NANCY his wife, late NANCY
MOORE, administrators of SOLOMON MOORE, deceased.

*Sussex, July T.* 1821.

In a suit by a bank against a late cashier and the sureties in his official
bond, upon the death of the cashier insolvent, the cause will proceed
against the sureties, though no administrator of the cashier may have
been appointed and made a party defendant.

Practice in equity with respect to the necessity of joining as parties all
persons interested, and the exceptions to the rule stated.

The charter of the Farmers' and Mechanics' Bank of Delaware required that
a bond should be taken from the cashier, with surety, &c. and "with
condition of good behavior." The condition of the bond taken in this case
was that the cashier should "well and truly, and with fidelity, perform
and discharge the duties enjoined on him as cashier of the Farmers'
and Mechanics' Bank of Delaware, agreeably to the laws and regula-
tions therein made and provided, &c." *Held*, that the condition of
the bond was a sufficient compliance with the direction of the charter,
and that it was valid.

Where the transactions material to ascertain the sum for which a party is
liable are complicated, involved in confusion and difficulty, and require
minute investigation, such as a jury cannot give, they are a proper
subject of relief in a court of equity, by a decree for an account

BILL FOR AN ACCOUNT.—This bill was filed against the
defendant, William Polk, late cashier of the Farmers' and
Mechanics' Bank of Delaware, and the other defendants as
the sureties of the cashier in his official bond. The bill
alleged a deficiency in the cashier's accounts, to an amount
exceeding $5,000.00, and prayed a decree that an account

be taken under the direction of the Court, in order to ascertain the amount of the deficiency, and that the defendants be decreed to pay such deficiency when ascertained.

After the filing of the bill, William Polk, the late cashier and principal defendant, died insolvent. No administration was raised ; nor any new party made to represent his estate.

Answers were filed on behalf of the surviving defendants, in which they admitted the execution of the bond, with sureties, as alleged in the bill. They disclaimed any knowledge of the cashier's accounts, alleged that the sureties had taken no indemnity in their suretyship, and for a defence insisted upon several grounds, viz : (1) that the complainants had an adequate remedy at law, upon the bond ; (2) that by the terms of the bond, the defendants were answerable only for the first year of William Polk's cashiership, within which the alleged default did not occur. (3) That the complainants had been guilty of negligence in permitting Polk to be absent from the bank, and that other persons beside Polk had held the custody of the cash, so that his liability could not be fixed.

Issues were joined and depositions taken on both sides. There was much evidence as to the transactions of the cashier, which, however, was not material to the points argued and decided.

The official bond of the cashier was as follows, viz :

" Know all men by these Presents, That we, William " Polk, &c., are held and firmly bound unto the President, " Directors and Company of the Farmers' and Mechanics' " Bank of Delaware, in the penal sum of $25,000.00, good " and lawful money of the State aforesaid ; to which pay- " ment, well and truly to be made, we bind ourselves, our " heirs, executors and administrators, jointly and severally,

"firmly by these presents.  Sealed with our seals, and "dated this 24th day of September, A. D. 1812.

" *The condition of the above obligation is such,* that if the "above bounden, William Polk, shall and doth, well and "truly, and with fidelity, perform and discharge the duties "enjoined on him as cashier of the Farmers' and "Mechanics' Bank of Delaware, agreeably to the laws and "regulations therein made and provided, then the above "obligation to be void and of no effect, or else to remain "in full force and virtue in law."

A warrant of attorney to confess judgment was annexed to the bond.

The Act of Assembly which incorporated this Bank, (4 Laws of Delaware, 542) enacted, that " the cashier or "treasurer before he enters on the duties of his office "shall be required to give bond, with one or more sure-"ties, to the satisfaction of the directors, together with a "warrant of attorney to confess judgment or judgments "thereon, in a sum not less than $25,000.00, *with condition* "*of good behaviour.*"

The cause came before the Chancellor for a hearing upon the bill, answer, exhibits and depositions, at the July Term, 1821.

*Robinson* and *Hall,* for the complainant.

1. The first objection taken in defence is that William Polk, one of the defendants, having died since the filing of the bill, no administrator has been made a party in his place.  Were the objection sustained, the Court would not, on that ground, dismiss the bill, but would order the cause to stand over until proper parties should be made. But the objection is not tenable.  The suit was properly brought, in the first instance, all the obligors in the bond being joined.  The death of Polk and the absence of an administration is an event beyond the control of the com-

22

plainant. The complainant in a cause is not bound to raise an administration on the the estate of one deceased defendant, in order to get the benefit of his proceeding against the other defendants. It is for them to raise an administration if their interests are involved in having one. The Bank, as a corporate body, cannot administer, nor, if it were an individual, could it properly represent the interest of the adverse party. Neither, as a corporation, has it authority to employ a person to administer. It could not legally indemnify a person so employed. It results then, that from necessity the cause must proceed against the surviving obligors ; for, otherwise, there would be a failure of justice to the complainant. At the same time the defendants can suffer no injustice ; because the case shews that Polk died insolvent, and there is no interest or benefit in raising an administration. Further, this is a joint and several bond, under which the cause of action survives. *Collins vs. Griffeth,* 2 *P. Wms.* 313 : *Eq. Cas. Abr.* 168, *pl.* 19 : *Madox vs. Jackson* 3 *Atk.* 406 : *Cranburn* and *Boyce vs. Crisp et al., Finch* 105 : *Durand vs. Whittingham, Mosely,* 85 : 1 *Blk. Com.* 504 : 2 *Mad. Ch.* 154 : 1 *Johns R.* 438.

2. Another objection is to the official bond. This, it is insisted, is illegal and void, because the condition is not in the form prescribed by the charter. To this objection the answer is two-fold. In the first place, the Bank has the power, without special authority, to take bond and security from its officers or servants in any form it pleases. The charter, as a security to the public, requires bond and surety in a prescribed mode: but this does not disable a corporation from taking a bond in another form, in the exercise of its general power ; nor does it invalidate such a bond, if it be valid on general principles. This bond is good in form as an obligation, and is upon a sufficient consideration, which is the giving of the office of cashier to the principal. In the next place, the charter does not prescribe in what

words the condition of the bond shall be taken, and the condition as taken is a substantial compliance with the charter. The bond is required to be taken " with condition of good behavior." The condition of this bond is, that he " well and truly and with fidelity, perform and discharge " the duties enjoined on him as cashier of the Farmers' " and Mechanics' Bank of Delaware, agreeably to the laws " and regulations therein made and provided." Now, whatever would be a breach of the condition of the bond as it was taken, would be a breach of a condition taken in the words of the Act. " Good behavior," is conduct conformed to the by-laws and regulations. Any violation of them is bad behavior.

3. As to the question of jurisdiction. This case peculiarly belongs to a court of equity. It is one of complicated accounts, involving the examination of many books, and which, as a witness states, it would take three months to adjust and settle. It matters not that in such a case a court of law may have jurisdiction. That does not exclude the concurrent jurisdiction of this Court,—5 *Ves. Jr.* 794: more especially so, in doubtful or difficult cases,—1 *Ves. Jr.* 424. The action of account at law has fallen into disuse. This mode of relief has come to be considered peculiarly appropriate to courts of equity, from their ability to deal more effectively with such subjects. There are many cases, similar to this, in which equity has relieved. 2 *Ves. Sr.* 371: 3 *Atk.* 383: 2 *Atk.* 141: 1 *Atk.* 126.

Again, this bond is not within the Statute, 8 and 9 Will. III, there being a warrant of attorney. 1 *Tidd* 511. The complainant might have entered a judgment and taken out execution; in which case, the defendant could have been relieved only in equity. If this be so, the complainant is also entitled to come into this Court; for the remedy must be mutual.

*J. D. Wells* and *Wm. H. Wells*, with whom was *Cooper*, for the defendants.

1. We insist upon the general rule which requires all interests to be represented in the cause, and that the bill be dismissed for the want of proper parties. The cases cited for the complainant stand upon grounds of exception to the rule, which do not here apply. The complainant says, that being a corporation it could not administer. But it could have caused an administration to be raised; and this was its duty, not ours.

2. The bond does not pursue the form prescribed by the charter, and is therefore void. It is a defect which cannot be cured. Acts done under a special authority, which may affect third persons, are void if they do not pursue the authority. 1 *Burr.* 120: *Dyer* 263, 6, *pl.* 36: 3 *Viner* 421: 2 *T. R.* 169: 1 *T. R.* 707: *Doug.* 554: 5 *Co. Rep.* 4: 1 *T. R.* 707. If less be done than is commanded, the act is wholly void; if more be done, it may be good for what is commanded but void for the excess. 1 *Co. Inst.* 56, 252 *a.* This bond is void at law, and equity will not relieve against the defect, because that would be to charge sureties, which equity will not do further than they are chargeable at law. 2 *Comb.* 668: 2 *Com. Dig.* 672, 4, *D*: 3 *Atk.* 92.

3. The case is not within the jurisdiction of this Court, the complainant having ample remedy at law. The claim is for a sum certain, or which can be made certain by the accounts of the Bank. The bill shows this. It states what the cashier has received and what he is chargeable for. It then alleges that an account with the cashier was stated, showing a balance due the Bank;—further, that the cashier retains the statement and makes no objection. That, if true, is equivalent to an account stated, recoverable at law. What necessity then is there to come into this Court?

The bill is for an account. The jurisdiction of this Court for an account is concurrent, and will be exercised only in sound discretion, and where the circumstances require it. 1 *Ves. Jr.* 424: 5 *Ves. Jr.* 794.

Such a bill properly lies only against a defendant who has something to show by way of account, necessary to the complainant's relief; as where an account is sought against a tenant for rents and profits received, or against a trustee respecting the trust fund; or, at least, where some discovery is sought of matters within the defendant's knowledge, requisite to enable the complainant to state an account. No account lies for a sum certain, ascertained or ascertainable without a discovery. 1 *Bac. Abr.* 36 : 1 *Harrison's Ch. Pr.* 69 : 3 *Black Com.* 437. In this case, the defendants, who are sureties, know nothing and can show nothing. They have received nothing to account for, and no matter requiring discovery on their part is shown by the bill.

It is argued that this bond, not being under the Statute of William III, the complainant could have entered a judgment and issued execution, in which case the defendants could have been relieved in equity only; and that as defendants could then have been relieved in equity, so may the complainant now be. The substance of this argument is that by doing a wrong the complainant could have forced the defendants into equity, and therefore the complainant may go into equity. That is a clear *non sequitur*.

The real object and effect of this bill is to enable a corporation, which has got its books wrong, to call on this Court to aid it as a clerk in stating an account. The Court will undertake no such office, nor subject us to the cost of a proceeding for such a purpose.

It matters not at what stage of the cause a want of jurisdiction is discovered. In no case will the Court proceed to a decree without jurisdiction. 2 *Com. Dig.* 564 : 1 *Ves. Jr.* 371 : 4 *Dallas* 336 : 1 *Harrison's Ch. Pr.* 69.

RIDGELY, CHANCELLOR.—Three principal objections are made by the defendants to this bill. *First,* that there are

not proper parties before the Court. *Second,* that the bond was not made according the Act of the General Assembly ; and *third,* that this is such a case that the Court ought not to decree an account.

1. *As to parties.* The rule is, that all persons materially interested should be parties to the suit, either as complainants or defendants, so that the Court may determine the rights of all the persons interested in the subject matter of the suit, and make a complete decree. But if some of the persons interested reside out of the jurisdiction of the Court, or cannot for any other reason be brought before the Court, and the fact is charged, that forms an exception. An impossibility cannot be required. If it is not in the power of the party to bring every person interested in the matter before the Court, then the party may proceed without such person. William Polk was made party to this bill; he has since died, and administration has not been taken on his estate. Besides, he died insolvent. It is most evident then, that the complainants can obtain no satisfaction from Polk, if he were a defaulter; nor from his representative, if he had any ; neither could the defendants ; and as to any discovery or disclosure, neither party is bound to administer. The Bank could not by itself, and it is not its duty to constitute an agent for that purpose. Any of the defendants may, but as this has not been done the objection cannot be sustained.

2. *As to the bond.* The bond is good at common law. The Act of Assembly has not prescribed a particular form in which it shall be taken, and it has not made a bond void, if not taken in the words of the Act. In *Mitchell vs. Reynolds,* 1 *P. Wms.* 181, Parker, Chief Justice, in delivering the resolution of the Court, says; " all the instances " of conditions against law in a proper sense, are reducible " under one of these heads : *First,* either to do something " that is *malum in se,* or *malum prohibitum.* 2 *Co. Inst.* 206. " *Second,* to omit the doing of something that is a duty.

" *Palm.* 172 : *Hob.* 12 : *Norton vs. Sims. Third,* to
" encourage such crimes and omissions. *Fitzherb, Title,*
" *Obligation,* 34 : *Dyer,* 118. Such conditions as these the
" law will always, and without regard to circumstances,
" defeat ; being concerned to remove all temptations and
" inducements to those crimes; as in 1 *Co. Inst.* 206 ;—a
" feoffment shall be absolute for an unlawful condition,—
" a bond shall be void."

Here, the bond differs from the Act of Assembly in words
only. The condition is to " discharge the duties enjoined
" on him as cashier, &c., agreeably to the laws and regu-
" lations therein made and provided," which amounts to a
condition of good behavior, because it was his duty to con-
form to the laws and regulations established. However,
the bond is according to all the rules of law, and is bind-
ing on the parties. This is not so strong a case as
*Beaufage's,* 10 *Co. Rep.* 99, in relation to bonds given to
Sheriffs under the *Act,* 23 *Hen.* 6, *ch.* 10 : and there,
although bonds taken in any other form than that prescribed
by the Statute are declared to be void, yet there are several
instances cited where bonds which did not essentially
differ by addition, alteration or diminution were adjudged
to be good. Here, the Act does not make void a bond
which may differ from it; and if it is not, as this bond is
not, to commit *malum in se,* or *malum prohibitum,* or to omit
the performance of a duty, or to encourage such crimes
or omissions, it is good in law; and then, according to the
cases cited by the complainant's counsel, the defendants are
bound by it in this Court.

3. Is this such a case that the parties should be decreed
to account? Upon that point I have no doubt. These
transactions are so complicated, so long and intricate, that
it is impossible for a jury to examine them with accuracy.
They will require time, assiduous attention and minute
investigation, and are involved in so much confusion and
difficulty that no other tribunal, by reason of the forms of

proceeding of the courts of law, can afford the plaintiff a remedy.

An interlocutory decree for an account was entered.

THE CHANCELLOR afterwards adverted to this case, and remarked that in ordering the account he had not at all determined the extent of the liability of the sureties and the ultimate right of recovery in this Court. He considered that the reasoning of the complainant's counsel and the authorities cited warranted the decree for an account; but how extensively the sureties were responsible for the acts or defaults of William Polk was a question yet to be determined, after it should have been ascertained by the account whether any default had been committed.

The decree of the Chancellor for an account was reversed by the High Court of Errors and Appeals at the June Term, 1822. The reversal did not proceed upon a difference of opinion on the points above decided by the Chancellor; but the appellate court considered that, upon the proofs, the complainant had been guilty of laches and breach of duty in its dealings with the cashier, such as to absolve the sureties from responsibility; and, therefore, that any inquiry, under the decree for an account, into the alleged defalcations of the cashier was unnecessary. It was on this ground that the decree was reversed.