THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal
Corporation of the State of Delaware, at the Instance
of JOSEPH L. CARPENTER, JR., J. NEWLIN GAWTHROP
and SAMUEL CHAMBERS, the Board of Directors of the
Street and Sewer Department for the City of Wil-
mington, *v.* JOHN EDWARD ADDICKS, JOHN G. BAKER,
FREDERICK P. ADDICKS, SIMON B. CONDE and SAMUEL
AUSTIN.

New Castle, September Term, 1893.

**Injunction; Parties; Demurrer.**

1. It is a well-established and undoubted rule in equity pro-
ceedings, that all persons materially interested, should
be parties to the suit, either as complainants or de-
fendants, in order that the court may determine the
rights of all parties interested in the subject-matter
of the suit, and make a complete decree.

2. It is undoubtedly true that whenever a want of proper
parties appears on the face of a bill, the proper mode
to take advantage of this objection is by a demurrer.

3. A statement in the bill of the existence of a party, coupled
with an express denial of the existence, is not a fatal
admission on a demurrer for want of parties. If de-
fendants rely upon such actual existence, a different
mode of pleading must be adopted.

4. A demurrer to a bill admits to be true all the facts
as therein set forth.

5. The mayor and council of Wilmington, at the instance
of the individual members of the board of directors of
the street and sewer department of said city, filed a

NOTE. – The Chancellor having been counsel for respondents before his
appointment as Chancellor, in matters respecting this suit, upon his applica-
tion to the Governor for the appointment of a Chancellor ad litem, H. R.
Johnson was appointed to try this case.

bill to enjoin certain individuals from opening the streets of said city, to lay gas pipes, without the previous consent of said board. Defendants demurred on the ground that the bill alleged that said defendants were acting as officers and agents of the Oxy-Hydrogen Company, of this State, and that, therefore, said company should have been made a party defendant. Held, that the demurrer must be overruled, for the reason that the bill only stated that individual defendants claimed to act as such officers and agents and expressly denied the actual existence of said company; and that the demurrer, admitting all the facts in the bill, admitted the truth of such express denial of the actual existence of such company; that if the defendants relied upon such actual existence, they should have adopted some other mode of pleading.

INJUNCTION BILL.— Bill filed by the mayor and council of the City of Wilmington, at the instance of the members of the board of directors of the street and sewer department, against John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde and Samuel Austin, to enjoin said defendants from opening the streets in the City of Wilmington and laying gas pipes therein, without permission being first had and obtained from the said board of directors of the street and sewer department.

William C. Spruance and Edward G. Bradford, for the complainant.

The demurrer is filed because, as it is claimed, an alleged company called the Oxy-Hydrogen Company has not been made a party defendant.

The demurrer should be overruled in the first place because it is what is known as a " speaking demurrer."

It assumes as facts matters that are not set forth in the bill.

Such matters can only be brought forward by way of plea or answer.

1. The demurrer assumes what nowhere appears in the bill, namely, that what is termed the Oxy-Hydrogen Company has not only such an existence, but also such an organization as would render it capable of being joined as a party defendant.

(a) The demurrer sets forth that it is stated in the fifth paragraph of the bill that " said Oxy-Hydrogen Company of the State of Delaware, by its counsel, had notified the board of directors of the street and sewer department that it was its intention on the 31st day of March, A. D. 1891, to begin laying gas pipes in the streets of the said City of Wilmington."

There is no such statement in the bill. In the eighth paragraph thereof it is stated that " no legal or valid organization of said company has ever been effected; " and in the fifth paragraph it is stated that "the said board of directors of the street and sewer department on the 30th day of March, A. D. 1891, was notified in writing by the counsel of certain persons designated as the Oxy-Hydrogen Company of the State of Delaware that it was the intention of the said alleged company on the day following, to-wit, on the 31st day of March, A. D. 1891, to begin the laying of gas pipes in the streets of said city."

(b) The demurrer sets forth that by section 6 of the bill " it is further alleged that the present defendants claim to be officers, servants and agents of said company in the opening and excavation of Liberty street in said city as therein set forth."

There is no such statement in the bill. The bill sets forth in paragraph 6 that " the said defendants John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde and Samuel Austin, together with sundry other persons to your orators unknown, claiming to be officers, servants or agents of said alleged Oxy-Hydrogen Company of the State of Delaware," etc.

(c) The demurrer sets forth that by paragraphs 7 and 8 of the bill " it appears that said company was incorporated by an act of the General Assembly of the State of Delaware, a copy of which act is to said bill attached, and that said defendants claim to be acting thereunder."

This is a misstatement of the allegations of fact referred to. The bill in the eighth paragraph denies that the said alleged Oxy-Hydrogen Company has ever had a legal or valid organization, and in the seventh paragraph alleges that the " defendants claim and pretend that they were and are authorized and empowered to so enter upon, open and excavate any and all streets of said city for the purpose of laying gas pipes therein under and by virtue of the charter of the said alleged Oxy-Hydrogen Company of the State of Delaware," etc.

(d) In the demurrer it is alleged that by paragraph eight of the bill it appears " that the organization of said company is called in question by said complainant."

The bill in paragraph 8 expressly denies that any

legal or valid organization of the alleged company has ever been effected.

The demurrer should, therefore, be overruled as a " speaking demurrer."    Story's Eq. Pl., § 448; 1 Dan. Ch. Pl. & Pr. *656.

2. The demurrer should be overruled because it admits that the alleged Oxy-Hydrogen Company has no right to tear up the streets of Wilmington, or to do what the defendants have been restrained by the injunction of this court from doing.

The bill sets forth in the eighth paragraph of the stating part that " no legal or valid organization of said company has ever been effected."

This admission is made by the parties demurring, and yet with apparent seriousness they contend that the alleged company should be made a party in order to be heard upon the question whether or not it has the right to tear up the streets of Wilmington.

It cannot be seriously contended that a company which has never had a valid or legal organization has the right to carry on its business.

Yet the tearing up of the streets of Wilmington for the laying of gas pipes would constitute the carrying on of such business.

The demurrants have, therefore, admitted by their demurrer that the alleged Oxy-Hydrogen Company has no right whatever to interfere with the streets of Wilmington; but notwithstanding this admission, which is conclusive for the purpose of the disposition of this demurrer, they contend that the alleged company should be made a party in order that it may be heard upon

the question of its right to do what the demurrants have thus solemnly admitted it has no right whatever to do.

It is difficult to conceive of any process of reasoning or principle of logic which would require this court to uphold the demurrants in such an impossible and inconsistent position as they have assumed.

In one breath they claim that the alleged Oxy-Hydrogen Company is entitled to be heard upon the question of its right to interfere with the streets, and also solemnly and conclusively admit that the said alleged company has no right whatever to dig up the streets.

It is well nigh impossible to elaborate argument to show more clearly the absolute unsoundness of the argument made in support of the demurrer.

3. This is not a case in which an effort is made to collaterally question the existence or organization of a corporation; nor a case of suit brought by or against a corporation upon a contract; other principles would apply in such a case.

But here certain individuals claiming to act as the agents of an alleged corporation seek to justify their action under the alleged authority of the corporation.

The city clearly has just as much reason and right to question the right as would a private individual whose real estate is threatened to be permanently injured and virtually appropriated under the alleged authority of a corporation.

If the corporation has no right to carry on its business involving the appropriation of streets of the city, it necessarily follows that the city can protect itself against the exercise of any such alleged rights upon

the ground that there is no power in the alleged corporation to do the act threatened or complained of.

Therefore, the utter want of a legal or valid organization is an absolute answer to the claim of any authority to do the act.

And this want of authority can be questioned by the city.    New York Cable Co. v. Mayor, etc., of New York, 104 N. Y. 1, 38, 43; Brooklyn Steam Transit Co. v. City of Brooklyn, 78 id. 524, 531; Dillon on Municipal Corporations, § 701, note.

The authorities show that the organization of a corporation in order that it may carry on business must be *de jure* as well as *de facto*.

But in this case all doubt whatver as to the proper disposition of the demurrer is removed by the solemn admission that the alleged Oxy-Hydrogen Company has never had a legal or valid organization, and, therefore, necessarily that it has never had the right to carry on business or do the acts complained of.

This admission having been made, it is the height of absurdity that the persons making the admission should object to the bill because it does not give an opportunity to the alleged company to have the court decide whether or not it could do what the demurrants have admitted it cannot do.

The cases cited by the counsel on the other side in which it was held necessary to join corporations as parties defendant were cases in which it appeared upon the face of the bill or otherwise in the case that such corporations had a valid existence and organization, and have no bearing upon the case now under discussion.

An apparent exception was the case of People v. Flint, 64 Cal. 49; but that case clearly has no bearing upon the case now under discussion as it was virtually a *quo warranto* proceeding.

4. If the alleged Oxy-Hydrogen Company had been made a party defendant by the complainant, the complainant would have been estopped from denying the valid organization and legal existence of said company.

Yet the absence of a legal and valid organization is one of the grounds stated in the bill upon which the interference of the court is prayed, and upon which the complainant has a right to stand.

5. The defendants have prematurely presented to the court what may or may not be a proper subject for its consideration at a later stage of the case.

They may, and as they claim to be officers and agents of the alleged company, it is to be assumed that they have the ability, by plea or answer, to controvert the allegations of the bill as to the absence of a valid or legal organization of such company; and if such allegations can be successfully controverted, the court would then have full power to require the joining of the said alleged company as party defendant.

But this end cannot be accomplished by demurring to the bill.

It is, therefore, respectfully submitted that the demurrer should be overruled.

Austin Harrington and H. H. Ward, for respondents.

All persons materially interested should be parties to the suit in equity, either as complainants or defend-

ants, so that the court may determine the rights of all persons interested in the subject-matter of the suit and make a complete decree.    Bank v. Polk et al., 1 Del. Ch. 167, 174; Martin v. Purnell, Exr., et al., 4 id. 249, 252; Mitf. Pl., note, 398 (ed. 1849); id. 190, etc.; 1 Dan. Ch. Pl. & Pr. 246, 287, note 2, 190 and note 5.

It is incumbent upon the court in a proper case upon demurrer, or otherwise, to order proper parties made to record.    1 Dan. Ch.. Pl. & Pr. 287, note 2, etc.

A corporation constitutes no exception from this general rule, and in order to make it a party, it must be sued in its proper corporate name.    1 Dan. Ch. Pl. & Pr. 143; High on Injunctions, § 781; Binney's Case, 2 Bland, 99; 4 Am. & Eng. Ency. of Law, 282, note 2, and 288, note 2; Dodge v. Woolsey, 18 How. (U. S.) 331; People v. Flint, 64 Cal. 49.

The Oxy-Hydrogen Company is not a party to this action, since no subpoena is prayed against it.    1 Dan. Ch. Pl. & Pr. 286, and note 4.

For some reason, there appears to have been an attempt to avoid making the "Oxy-Hydrogen Company of the State of Delaware" a party defendant.    See paragraphs 5, 6, 7, 8, 9, 10, 13, of the stating part of the bill of complaint, and section 2 of the prayers of said bill.

But the very allegations of fact which the complainants found it necessary to make to set out their case, and. even to accomplish their overstrained purpose to save themselves the necessity of making the "Oxy-Hydrogen Company" a party defendant, have irretrievably drawn said company into the case, and must

compel the making of said company a party defendant, both because it appears to be vitally interested in the subject-matter of the suit, and for the purposes of an adequate decree.    People v. Flint, 64 Cal. 49.

No trick of phraseology can prevent a court of equity from looking at the real state of facts, and the intention and purposes of the parties complainant to a suit.    The mere use of the word " alleged," whenever reference is made throughout the bill of these complainants, to the Oxy-Hydrogen Company, does not cover up the actual existence of this company.    The bill itself sets forth that the defendants claimed to be acting as agents of such a company.    The act of incorporation of this company is made a part of the bill of complaint.    An organization *de facto* of the company is not denied; the only denial of organization being that the company has no valid and legal organization.    In no portion of the bill do the complainants go so far as to deny the existence of the company.

If, upon the papers in the case to this point, and upon the argument of counsel for both sides, the court are of the opinion that the Oxy-Hydrogen Company must, at some stage of the case, in order to do justice to all parties concerned, and to make a complete decree, be made a party defendant to the record, the court may, at this stage, and upon this demurrer, order that to be done.

The complainants have found it necessary in their bill of complaint to put in issue:

(1) The legal organization of the company.    See §§ 8 and 9 of the bill of complaint.

(2) The powers and authorities, and the extent thereof, possessed or claimed to be possessed by the company, under its charter of incorporation. See §§ 7, 8, 9 and 10 of the bill of complaint, and § 2 of the prayers of said bill.

Without a determination of these two issues of fact and law by the court, the court cannot reach any conclusions upon the equities of the bill, or make any decree; but the court should not render any decree involving a judicial determination upon these two points, without giving this company an opportunity to be heard as a party. Any decree otherwise rendered would be simply nugatory, and would, in no respect, bind the company or its agents. People v. Flint, 64 Cal. 49; Binney's Case, 2 Bland, 99.

The prayer of the complainant is that the court will enjoin these defendants, whom the bill avers to be alleged agents of the company, and all other persons claiming to be agents of the company. Since the Oxy-Hydrogen Company is not made a party and no injunction is prayed against it, the prayer to restrain persons claiming to be servants, agents or employees generally, of the said company, is manifestly wholly unwarranted.

As a general rule, only persons named as parties can be enjoined. By no possible stretch of power can the unnamed agent of a person not named as a party be enjoined. High on Injunctions, § 747; Fellows v. Fellows, 4 Johns. Ch. 25; Iveson v. Harris, 7 Ves. 256.

The common practice of this court to enjoin the unnamed servants, agents and employees of a party, is based solely upon the injunction granted against a party,

as such, and is intended solely to prevent the performance by the party, by indirect means, of the matter or thing, which the party was expressly enjoined from doing.

As this action and its pendant injunction now stands, there is no reason why this company should not choose new officers or agents, proceed to dig up the streets of the City of Wilmington, until they should be newly enjoined upon a new bill filed; and if such new bill was modeled upon the present one, the company could again choose other officers and agents, and repeat the process; and so on forever.    Binney's Case, 2 Bland, 99.

Only those persons named in the writ, and their agents having knowledge of the order, can be made liable for a breach of the mandate of an injunction. High on Injunctions, §§ 862, 859.

The defendants do not propose to combat, that, by demurring, they have necessarily admitted all the facts plainly and sufficiently pleaded in the bill of complaint, to be true.    They are not content, however, to admit any extension of that rule of law, and desire to note that a demurrer does not admit either all conclusions of law, based upon facts sufficiently pleaded, nor all conclusions of fact, based upon facts sufficiently pleaded, to be true.    These defendants have, therefore, by their demurrer, not admitted to be true, either that a corporation having no valid and legal organization, has, therefore, no organization; or that a corporation, having no valid or legal organization, does not exist for the purposes of this suit; both of which were conclusions

drawn by the counsel for the complainant to their argument; but neither of which are sufficiently pleaded in the bill of complaint.

A corporation may have either a *de jure* organization or a *de facto* organization. A *de jure* organization must, undoubtedly, be the kind of organization, the existence of which, as to the Oxy-Hydrogen Company, is denied in the eighth and ninth sections of the bill of complaint, to-wit, a valid and legal organization. A *de facto* organization is none the less an organization, although it may be either formally or essentially defective in some particular. In a certain class of cases, such as *quo warranto* proceedings against a corporation for unauthorized assumption of corporate franchises, it may be necessary to plead and prove a *de jure* organization of such company; since, in such cases, the legal and valid formation and existence of the corporation are the essential facts at issue. But in all other cases, the *de jure* organization of the company is usually immaterial, and the validity and legality of such organization cannot be called in question, and, in such cases, a *de facto* organization is sufficient for all purposes. Morawetz on Corporations (2d ed.), § 37, and citations.

The proof of the existence of a corporation *de facto* is sufficient, if it be shown, first, that a charter or some law, under which a corporation with the powers assumed, might lawfully be created, exists; second, a user, by the corporation, of the rights claimed to be conferred by such charter or law; and irregularities in the organization of the company short of fraud, are not

material.   Morawetz on Corporations (2d ed.), § 777, and citations.

The face of the bill shows the existence of a charter or law, under which the Oxy-Hydrogen Company might lawfully be created; since that charter is expressly made a part of the bill of complaint.   Notwithstanding the consummate art displayed in the draft of the bill of complaint, the complainant clearly shows a user by the Oxy-Hydrogen Company of the rights claimed to be conferred by that charter or law.   An examination of the bill of complaint shows that it is clearly set out that the counsel for the Oxy-Hydrogen Company, on the 30th day of March, 1891, notified the street and sewer department of the City of Wilmington, in the name of said company, that said company proposed to proceed under their charter, and to begin work on the following day in laying gas pipes, under the provision of its charter.

In section 6 of the bill of complaint, it appears that these defendants, together with sundry other persons unknown, claiming to be officers, servants and agents of said "alleged" Oxy-Hydrogen Company, of the State of Delaware, did, on the following day, pursuant to the notice of said company, open and excavate a certain street of the City of Wilmington, known as Liberty street, for the purpose of laying gas pipes therein, and that down to the filing of the bill, they continued engaged in the opening and excavating of said street, for the purpose aforesaid; and that they threatened and intended to enter upon, open and excavate other

streets of said city, for the purpose of laying gas pipes
therein.    By section 7, it appears that these defend-
ants claimed and pretended that they were authorized
and empowered to so enter upon and excavate any and
all streets of said city, for the purpose of laying gas
pipes therein, under and by virtue of the charter of the
said " alleged " Oxy-Hydrogen Company of the State
of Delaware, etc.    By section 10, it appears, by neces-
sary implication, that at the time of the filing of the bill
of complaint, the said " alleged " Oxy-Hydrogen Com-
pany of the State of Delaware, had expended money
in and for the prosecution of the business, for which
said charter was granted.    That it appears in other parts
of said bill of complaint that the said " alleged " Oxy-
Hydrogen Company was, in fact, through its agents
and employees, in full swing of operations under its char-
ter, and that this bill was filed for the sole purpose of
restraining said " alleged " corporation from so acting
by its agents and employees; and that all of the persons
claiming to be agents and employees of said company,
known to the complainant, were made parties to this
bill of complaint, and an injunction prayed and secured
against them.    Stronger allegations and indications of
user of the powers claimed by this company, under its
charter set forth in the bill, can surely not be required
than plainly appear upon the face of such bill and its
exhibits.    Thus, we see, that upon the face of this bill
of complaint, both the charter and the user incontro-
vertibly are shown.    But we are not left to deduction
even from such plain premises as these, as to the exist-
ence of ·a *de facto* organization of this company; for,

in section 13 of said bill of complaint, it appears that the complainant in this bill, on the 1st day of April, 1891, delivered copies of certain preambles and resolutions of the board of directors of the street and sewer department of the City of Wilmington, not only to the counsel of the said " alleged " Oxy-Hydrogen Company of the State of Delaware, but to John G. Baker, who claimed to be the president thereof. Either the service of that copy upon John G. Baker, who claimed to be the president of this company, was a legal and effective act, or it was merely nugatory and ineffective; but, for the purposes of this argument, we have a right to assume from the fact that the complainant has alleged the service of these copies, and devoted an entire section to this statement of the service of such copies, that such service so constitutes a material fact, and must be taken to be a recognition on the part of this complainant of the existence *de facto* of the Oxy-Hydrogen Company.

If this company appears upon the face of the bill and its exhibits to have a *de facto* organization and existence, all of the arguments, based upon the assumption that such company has no such existence whatsoever, fall to the ground. When we consider that, as appears by section 13, and by the date of the order of this court, that the copy of the above preamble was served upon John G. Baker, who claimed to be the president of this company, on the 1st day of April, 1891, and that the restraining order of this court was granted against these defendants on the 2d day of April, 1891,

and that the bill of complaint was actually filed in this court upon the 1st day of April, 1891, we see how utterly fallacious the argument of the complainants is, that, because of the absence of a legal and valid organization, the corporation did not exist, and that, therefore, they could not know the name of the president, on whom to serve subpoena and injunction.

As to the " speaking " character of this demurrer, the defendants would say that upon the authority of the citations of law, made by the complainant in its argument before the court, upon this motion, it appears that if any portion of the demurrer is legally and properly expressed, that the " speaking " portion, if any, may be disregarded as surplusage; and that if there remains sufficient of the demurrer, properly phrased upon which a decree may be based, the presence of such surplusage is immaterial. Even the most cursory reading of the bill of complaint, and the demurrer, will show that the Oxy-Hydrogen Company. is a necessary party, and that sufficient properly-worded reasons appear in said demurrer. Taking the most extreme position of the complainants in their argument before the court, that all the operations, described in said bill, were performed and all of the notices, copies of preambles and resolutions, etc., were served by and upon private persons, who claimed to be officers, counsel, agents and employees of an " alleged " corporation, and who professed to be acting by the authority of, and in accordance with the powers and authorities in the charter of an " alleged " corporation, the defendants would argue that

such corporation is so vitally interested in this suit, that its exclusion as a party could not be justified on the ground of injustice to it and its stockholders, and that the Chancellor could not make a complete decree, unless it were so joined.    The mere fact that a corporation is alleged to exist, by any person, and that persons claiming to be acting as agents of it, constituted in one case, which we have cited to the court, a sufficient ground, why, upon a demurrer like this, such " alleged " corporation should be made a party defendant; and moreover, in that case, it appeared affirmatively upon the record, and after full and explicit proof upon evidence taken, that such corporation had, in fact, no legal existence whatever.    People v. Flint, 64 Cal. 49.

'We contend that the case now before your Honor is far within that case, since it is nowhere alleged on the face of this bill that the Oxy-Hydrogen Company does not exist *de facto*, but, on the contrary, its existence *de facto* doubly appears upon the face of this bill.

We would, therefore, conclude that as appears upon the face of this bill, that the legal organization of this company and its powers and authorities under its charter of incorporation, are questioned, and that this court must judicially pass upon the existence and powers of this company, in order to render a decision against these parties defendant, who, it is " alleged " in said bill, claimed to be acting merely as agents of this company, and in accordance with the powers of its charter, that this company is vitally interested in the subject-matter of this suit, and that the court cannot make a complete

and conclusive decree without its joinder as a party defendant. That the court must pass upon the powers claimed in the charter of the Oxy-Hydrogen Company is evident, since an act of the Legislature is set up by the complainant, in opposition to the charter of this company, and the court is asked to decide that such act of the Legislature is paramount to the powers granted under the charter of this company.

Whether the Oxy-Hydrogen Company has or has not a " legal and valid " organization may be a question of interest later in the case, and whether it be a material point in this case that it has such an organization, will probably be hereafter fully discussed. But if, indeed, it be of such vital importance as the argument of the complainant would indicate, it is of sufficient importance so that it should not be determined without giving the company a chance to be heard, or without joining this company in this suit, so as to enable the Chancellor to make a decree, binding on this company.

The court will note that all of the cases, cited by the complainants on the point, arose where the company, whose organization was questioned, was a party, and had a chance to be heard, and was concluded by the decree. This is all we are now asking. The complainant has not produced and cannot produce a single case where the court has gone into the question of the organization of an interested company, without the joining of such company as a party.

JOHNSON, CHANCELLOR AD LITEM.— The bill in this cause was filed on the 2d day of April, A. D. 1891, by

the complainant, the mayor and council of Wilmington, a municipal corporation of the State of Delaware, at the instance of Joseph L. Carpenter, Jr., J. Newlin Gawthrop, and Samuel Chambers, the board of directors of the street and sewer department for the City of Wilmington, against the defendants, John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde and Samuel Austin, to restrain them, their servants, agents and employees and all persons claiming to be servants, agents or employees of a certain alleged corporation called the Oxy-Hydrogen Company of the State of Delaware, from further opening or excavating or causing to be opened or excavated any of the streets of Wilmington for the purpose of laying gas pipes therein, without the permission first had and obtained of the said board of directors of the street and sewer department for the City of Wilmington, and on the same day a preliminary injunction was granted in accordance with the prayer of the bill.    To this bill the defendants have demurred, and for cause of demurrer set forth that " it appears by said complainant's bill that the Oxy-Hydrogen Company of the State of Delaware, therein named, is a necessary party to the said bill, inasmuch as it is therein stated, in the fifth paragraph thereof, that the said Oxy-Hydrogen Company of the State of Delaware, by its counsel had notified the board of directors of the street and sewer department that it was its intention on the 31st day of March, 1891, to begin laying gas pipes in the streets of said city of Wilmington; that by section 6 thereof, it is fur-

ther alleged that the present defendants claimed to be officers, servants and agents of said company in the opening and excavation of Liberty street, in said city, as therein set forth; that by paragraphs 7 and 8 of said bill, it appears that said company was incorporated by an act of the General Assembly of the State of Delaware, a copy of which act is to said bill attached, and that said defendants claimed to be acting thereunder; that by paragraph 8 of said bill, it appears that the organization of said company is called in question by said complainant; that by paragraph 9 and other paragraphs of said bill, it is alleged that even if said company is possessed of a legal organization, it would not have any right or authority under said act, without the permission of said board of directors of the street and sewer department, to enter upon, open or excavate any of the streets of said city for the purpose of laying gas pipes therein; that it further generally appears by said bill, that the whole scope and object of said bill is the determination of the rights and powers of said company under its said charter to lay gas pipes in the streets of said city, and that the result and effect of said suit will be to judicially determine the rights and powers of said company under its said charter; but the said complainant has not made the Oxy-Hydrogen Company of the State of Delaware a party to the said bill."

For the purpose of the proper consideration of the only question which is raised and presented by this demurrer, viz.: whether or not a certain alleged corpora-

tion, called the Oxy-Hydrogen Company of the State of Delaware, should be made a party defendant, I will quote several paragraphs from the bill.

Paragraph 5 of the bill is in the following language: "That the said board of directors of the street and sewer department on the 30th day of March, A. D. 1891, was notified in writing by the counsel of certain persons designated as the Oxy-Hydrogen Company of the State of Delaware, that it was the intention of said alleged company on the day following, to-wit, on the 31st day of March, A. D. 1891, to begin the laying of gas pipes in the streets of said city; a full and true copy of which said notice is hereto annexed, marked B, and your orator prays that the same may be taken and considered as a part of this bill of complaint."

Paragraph 6 of the bill is in the following language, viz.:

"That afterwards, to-wit, in the day and year last aforesaid, pursuant to said notice, the said defendants, John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde and Samuel Austin, together with sundry other persons to your orator unknown, claiming to be officers, servants or agents of said alleged Oxy-Hydrogen Company of the State of Delaware, unlawfully and without the permission of the said board of directors of the street and sewer department, and without first making application to said board for such permission pursuant to the aforesaid rule or regulation of said board, entered upon, opened and excavated a certain street of said city, known as Liberty

street, for the purpose of laying gas pipes therein, and still continue engaged in the opening and excavation of the said street for the purpose aforesaid, and threaten and intend to enter upon, open and excavate other streets of said city for the purpose of laying gas pipes therein."

Paragraph 7 of the bill is in the following language, viz.:

"That said defendants claim and pretend that they were and are authorized and empowered to so enter upon, open and excavate any and all streets of said city for the purpose of laying gas pipes therein, under and by virtue of the charter of the said alleged Oxy-Hydrogen Company of the State of Delaware, without the consent or permission of said board of directors of the street and sewer department, and without making any application to said board as required by the aforesaid rules or regulations of said board."

Paragraph 8 of the bill is in the following language, viz.:

"That an act of incorporation, entitled 'An act to incorporate the Oxy-Hydrogen Company of the State of Delaware,' was passed by the General Assembly of this State on the 3d day of April, A. D. 1873; a copy of which said act, marked C, is hereto annexed, which your orator prays may be taken and considered as a part of this bill of complaint; under which said act the said defendants claim to be acting as aforesaid; but your orator is informed, believes and charges that no legal or valid organization has ever been effected; and your

orator denies that under or by virtue of said act of incorporation the said defendants or any of them have any right or authority to enter upon, open or excavate any of the streets of said city for the purpose of laying gas pipes therein."

Paragraph 9 of the bill is in the following language, viz.:

" That your orator is advised, believes and avers that the said alleged Oxy-Hydrogen Company of the State of Delaware has not, and even if possessing a legal organization would not have any right or authority under the said act of incorporation, without the permission of said board of directors of the street and sewer department, to enter upon, open or excavate any of the streets of said city for the purpose of laying gas pipes therein."

Paragraph 10 of the bill is in the following language, viz.:

" That before the expenditure by or on behalf of the said alleged Oxy-Hydrogen Company of the State of Delaware, of any money in or for the prosecution of the business for which said charter was granted, said board of directors of the street and sewer department became possessed of and vested with entire jurisdiction and control of the streets of said city as hereinbefore set forth; and the power granted by said charter to said company to lay gas pipes in the streets in this State was thereby subordinated to the paramount power and authority of said board to control the streets of said city and to prescribe and regulate the use thereof."

Paragraph 13 of the bill is in the following language, viz.:

" That heretofore, to wit, on the 1st day of April, A. D. 1891, copies of the aforesaid preambles and resolutions of said board were delivered respectively to the counsel of the said alleged Oxy-Hydrogen Company of the State of Delaware, and to the said defendant John G. Baker, who claims to be the president thereof; yet the said defendants persist in their wrongful and illegal opening and excavating of the streets of said city as aforesaid."

It is a well-established and undoubted rule in equity proceedings that all persons materially interested should be parties to the suit, either as complainants or defendants, in order that the court may determine the rights of all parties interested in the subject-matter of the suit and make a complete decree.    1 Del. Ch. 167-174; 4 id. 249.

This rule, however, is subject to certain exceptions not necessary here to mention.    It is contended on the part of the defendants, that this rule in regard to parties has been violated by the complainant by its omission to make a party defendant in this cause a certain alleged corporation called the Oxy-Hydrogen Company of the State of Delaware, which said company the defendants claim is a legally existing corporation under the laws of this State, possessing a legal and valid organization, and for the omission on the part of the complainant to make the said company a party defendant, have demurred to the bill.

It is undoubtedly true that whenever a want of proper parties appears on the face of a bill, the proper mode to take advantage of this objection is by a demurrer. Mitf. Ch. Pl. & Pr. 206.

Does it appear on the face of the bill filed in this cause that the complainant has failed or omitted to make a party a defendant who ought to have been made such?

While it is true that the complainant in certain paragraphs of the bill, and which are fully set forth above, refers to a certain alleged corporation called the Oxy-Hydrogen Company of the State of Delaware, yet at the same time in no way recognizes in said paragraphs or in any other parts of the bill, the valid or legal existence of such a corporation as the Oxy-Hydrogen Company of the State of Delaware, but on the contrary, expressly charges that no legal or valid organization of said company has ever been effected. It nowhere appearing on the face of the bill that there is in existence a corporation possessing a valid or legal organization by the name of the Oxy-Hydrogen Company of the State of Delaware; but a corporation by that name, possessing a legal and valid organization, being expressly denied by the bill, I do not see how a demurrer for want of proper parties, would properly lie.

By demurring to the bill instead of adopting some other course of pleading, the defendants have necessarily admitted the truth of the matters and facts contained in the bill, and as it is alleged in the bill that no legal or valid organization of the said Oxy-Hydrogen Company of the State of Delaware has ever been effected, the effect of the demurrer is to admit the truth of such allegations.

6

If it is the object and purpose of the defendants to controvert the allegations contained in the bill, they should do so by some other mode of pleading than by demurring.

As it is my opinion that this demurrer should be overruled, for the reasons above given, I have not thought it necessary to deal with many of the questions discussed at the argument, especially as most of them will more appropriately arise at some subsequent stage of the cause, when the cause shall be at issue upon the proper pleadings.

The demurrer must be overruled, and leave is granted to the defendants to plead or answer.