**MEDTRONIC, INC., a Minnesota Corporation, Plaintiff-Appellee,**

v.

**INTERMEDICS, INC., a Texas Corporation, and Intermedics Illinois, Inc., a Texas Corporation, Defendants-Appellants.**

No. 83–1826.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1983.

Decided Jan. 12, 1984.

Rehearing and Rehearing En Banc Denied Feb. 10, 1984.

---

John J. Verscaj, Bell, Boyd & Lloyd, Chicago, Ill., for defendants-appellants.

Martha A. Mills, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiff-appellee.

Before POSNER, COFFEY and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

This appeal from a district judge's refusal to stay a lawsuit requires us to consider the recurrent and difficult question of the appealability of orders granting or denying stays. The plaintiff, Medtronic, manufactures pacemakers in competition with the defendants, two affiliated corporations that we shall refer to jointly as Intermedics. Medtronic complains in this diversity suit that Intermedics hired away from Medtron-

ic three of its key sales representatives, and by doing so broke a contract with Medtronic settling earlier litigation between the firms and violated common law prohibitions against conspiracy and unfair competition. The amended complaint asks for actual damages in an amount yet to be determined but substantially in excess of $2 million; punitive damages; a permanent injunction against Intermedics' assigning any of the three sales representatives to an Intermedics sales territory that includes a hospital customer whom any of them had approached in the year preceding their departure from Medtronic; and an accounting of the profits made by Intermedics from those customers. Intermedics asked the district judge to stay Medtronic's suit because a similar suit brought by Medtronic against Intermedics, Inc. (the parent) was pending in a federal district court in Minnesota. The district judge denied a stay, Intermedics has appealed, and we must decide whether we have an appealable order.

The rule is that only a final judgment can be appealed to the court of appeals. 28 U.S.C. § 1291. But there are various exceptions, including one in 28 U.S.C. § 1292(a)(1) for orders granting or denying preliminary injunctions. And under the *Enelow-Ettelson* doctrine (named after the two cases that first announced it) a stay (1) based on an equitable defense but (2) issued in a suit at law is a preliminary injunction within the meaning of section 1292(a)(1). See, e.g., *Whyte v. THinc Consulting Group Int'l*, 659 F.2d 817, 818–20 (7th Cir.1981); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure § 3923 at pp. 48–58 (1977). The *Enelow-Ettelson* doctrine teaches that the word "injunction" in section 1292(a)(1) must be taken to refer to equity practice when this provision was first enacted, in the Evarts Act, 26 Stat. 828 (1891); the later merger of law and equity (see Fed.R.Civ.P. 1, 2) must be ignored. See *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1337 (7th Cir.1983) (dissenting opinion).

Intermedics moved for a stay of Medtronic's suit on the ground that Med-

tronic was subjecting it to a vexatious multiplicity of suits. This is an equitable ground, because in the days when law and equity were dispensed in separate courts a defendant in a suit at law, if he could show that the plaintiff was harassing him with multiple suits, could get an equity court to issue an injunction against the plaintiff's proceeding with one or more of the suits. See 1 Pomeroy, A Treatise on Equity Jurisprudence § 254 (1881). If, therefore, Medtronic's suit is an action at law, the two requirements of the *Enelow-Ettelson* doctrine (action at law, and equity ground for the stay) are satisfied and the district judge's denial of a stay is appealable. *Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 535–36 (7th Cir. 1982). But if it is not an action at law, the stay is not appealable. An equity judge would not have issued an injunction to stay a suit pending before him, as distinct from a suit pending before a law judge; and section 1292(a)(1) is limited to "injunctions." See *Whyte v. THinc Consulting Group Int'l*, supra, 659 F.2d at 818–19. Medtronic's suit, however, is a mixed law-equity action. It seeks damages, but it also seeks an injunction and an accounting for profits. We must determine whether such a suit would have been an equity suit in 1891.

A suit seeking a mixture of legal and equitable relief could have been brought then, if at all, only in an equity court. A law court could not give equitable relief, incidental or otherwise, while a plaintiff in equity could ask the equity court to grant him legal as well as equitable relief—for example, damages as well as an injunction—under the equity clean-up doctrine. See 1 Pomeroy, supra, §§ 236–41; *Wright v. Scotton*, 13 Del.Ch. 402, 417–18, 121 Atl. 69, 76 (S.Ct.1923); Dawson & Palmer, Cases on Restitution 146–51 (2d ed. 1969). There are, however, two relevant limitations to the equity clean-up doctrine. The first, which is absolute, is that the plaintiff must have a good case in equity if he wants the equity court to award him legal relief as well; otherwise a plaintiff could bypass the law court and litigate a purely legal claim

in equity. See cases cited in 1 Pomeroy's Jurisprudence § 237d n. 5 (Symons 5th ed. 1941). In other words, the invocation of equity jurisdiction must not be frivolous. But there is no indication of that here.

The second limitation, discretionary rather than absolute, is more problematic in this case. If the equitable relief sought was merely incidental to the legal relief sought, the equity court might refuse to entertain the suit and the plaintiff would then have to bring his suit in the law court and abandon his incidental equity claim. Even in such a case the equity court could if it wanted retain the case and award legal relief, as the Supreme Court held in *Clark v. Wooster,* 119 U.S. 322, 7 S.Ct. 217, 30 L.Ed. 392 (1886), where the plaintiff sued for an injunction against infringement of a patent that expired 15 days after the suit was brought, plus damages. But the trial court "might have dismissed the bill [i.e., the complaint], if it had deemed it inexpedient to grant an injunction," *id.* at 325, 7 S.Ct. at 218; and in most such cases the court, being unwilling to let the equity tail wag the legal dog, presumably would have dismissed, and the plaintiff would have been forced to abandon his claim for incidental equitable relief and bring his suit in a court of law. But so long as the claim for equitable relief was not merely incidental to the legal claim, the equity court could be expected to retain the case, and if it granted a stay it would be ordering matters on its own docket rather than enjoining the parties from proceeding in another court.

▮ Medtronic's complaint asks for an injunction and for an accounting of profits along with a very substantial amount of actual and punitive damages. Since what Medtronic lost as the result of Intermedics' alleged inveigling away of its sales representatives and what Intermedics gained are presumably similar though not necessarily identical amounts of money, the request for an accounting for profits can be assumed to be of comparable magnitude to the request for actual damages and therefore not merely incidental. But is it a request for equitable relief? Although accounting is conventionally described as an equitable remedy, for example in *Brannon v. Warn Bros., Inc.,* 508 F.2d 115, 118 (9th Cir.1974), the historical (and contemporary) picture is more complicated. Accountings were deemed inherently equitable in cases between partners and others in particular relationships, but this is not such a case and in most other cases an accounting was equitable only if it was too complex for a jury to understand. See Langdell, A Brief Survey of Equity Jurisdiction 101 (2d ed. 1908); 3 Pomeroy, *supra,* § 1421 (1883); and compare *Farmers' & Mechanics' Bank v. Polk,* 1 Del.Ch. 167, 175–76 (Ch. 1821), rev'd on other grounds, 1 Del.Ch. 176 (Ct.Err. & App. 1822); *Seymour v. Long Dock Co.,* 20 N.J.Eq. 396, 407 (1869), and *Trapnall v. Hill,* 31 Ark. 345, 354–55 (1876), with *Blood v. Blood,* 110 Mass. 545, 547 (1872), and *Frue v. Loring,* 120 Mass. 507, 509 (1876). Thus a suit for damages is not equitable merely because, as in *Zell v. Jacoby-Bender, Inc.,* 542 F.2d 34, 36 (7th Cir.1976), the plaintiff describes his action as one for an accounting and the computation of damages will require "a look into the plaintiff's business records." See also *Dairy Queen v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962).

▮ True, Medtronic is not seeking an accounting as an aid to computing damages; it is seeking an accounting of Intermedics' profits from the alleged wrongdoing, and thus making a claim for restitution based on unjust enrichment. The origins of unjust enrichment are both legal and equitable, see 1 Palmer, The Law of Restitution § 1.1 at p. 3, § 1.5 at p. 28 (1978); Dobbs, Handbook on the Law of Remedies 229 (1973)—but more the former, Goff & Jones, The Law of Restitution 3 (2d ed. 1978), especially in relation to a case like this, see *id.* at 479–81, 82 S.Ct. at 900–01; and the nineteenth-century authorities do not suggest that an accounting is equitable merely because the underlying theory of the case is unjust enrichment. It is also true, but not decisive on the question, that in *Dairy Queen,* which was such a case, the Supreme Court held that the only ground

for deeming an accounting equitable is its complexity, and went on to point out that since Fed.R.Civ.P. 53(b) authorizes the district court to use a special master to assist the jury in cases involving highly complex issues, rarely if ever is an equitable accounting warranted. See 369 U.S. at 478, 82 S.Ct. at 900. But the issue in *Dairy Queen* was not appealability; it was the right to a jury trial; and we shall see that when that right is at stake the Supreme Court does not use an exclusively historical approach to decide whether a claim is equitable. But the historical approach of *Enelow-Ettelson* governs the determination of the appealability of a stay. And the Supreme Court, in *Kilbourn v. Sunderland,* 130 U.S. 505, 515, 9 S.Ct. 594, 596, 32 L.Ed. 1005 (1889), quoted approvingly the statement in Story's treatise on equity jurisprudence that "There cannot be any real doubt that the remedy in equity, in cases of account, is generally more complete and adequate than it is or can be at law." See 1 Story, Commentaries on Equity Jurisprudence 451–52, 455–56 (13th Bigelow ed. 1886); but see Langdell, *supra,* at 108–09. Still another possibility here is that the accounting would be considered incidental to the injunction that Medtronic is seeking. This would be an independent basis for an equitable accounting. 3 Pomeroy, *supra,* § 1420 at p. 471 (1883); 1 Palmer, *supra,* § 1.5 at p. 24.

■ Fortunately—for the historical analysis appears to be well-nigh indeterminate in regard to whether Medtronic is seeking a legal or an equitable accounting— the complaint also seeks an injunction, and not as a mere incident to the damages sought. An injunction is a routine remedy in cases such as this because of the difficulty of calculating damages. See, e.g., *Northern Petrochemical Co. v. Tomlinson,* 484 F.2d 1057, 1059 (7th Cir.1973); Dobbs, *supra,* at 700; Goff & Jones, *supra,* at 515–16; Green *et al.,* Advanced Torts: Injuries to Business, Political and Family Interests 950–61 (1977). It may be difficult for Medtronic to prove that it lost (or Intermedics gained) particular sales as a result of the defection of the three sales representa-

tives—and impossible for it to estimate its future damages from the defection. An injunction that keeps the sales representatives out of the territories in which they made customer calls before they resigned from Medtronic may therefore be the only remedy that will eliminate the harmful effects of the alleged wrongdoing. It is not as if the only reference to equitable relief were the one in the last paragraph of Medtronic's amended complaint—"That the Court grant such other and further relief as it deems just and equitable." Then Medtronic would be requesting merely incidental equitable relief, and the refusal to stay the suit would be a refusal to stay a suit at law and would be appealable to us on the authority of the *Microsoftware* decision. But there is much more to Medtronic's prayer for relief than that.

■ In *United States v. American Institute of Real Estate Appraisers,* 590 F.2d 242, 245 (7th Cir.1978), we held a refusal to stay unappealable because the action stayed was "predominantly an equitable action since the primary relief sought [was] injunctive," and this may seem a different test from the "more than merely incidental" test of this opinion and of *Microsoftware.* But we added that "any fair doubt about the character of the action is to be resolved 'against the claim that the action is predominantly one at law,'" 590 F.2d at 245, quoting Judge Friendly's influential concurrence in *Schine v. Schine,* 367 F.2d 685, 688 (2d Cir.1966). The Ninth Circuit has set forth a similar test: "When a complaint is a homogenization of legal, equitable, and statutory elements, and it cannot fairly be said that either the legal or the equitable aspects predominate, the complaint shall be deemed equitable for the purpose of applying the *Enelow-Ettelson* rule." *Danford v. Schwabacher,* 488 F.2d 454, 457 (9th Cir.1973). Taken all together, the language of these cases suggests, consistently with *Microsoftware* and with the nineteenth-century authorities on equity reviewed in this opinion, that the question is not whether the action that is stayed on equitable grounds is predominantly equita-

ble but whether it is not predominantly legal. If it is not—if, in other words (see 16 Wright, Miller, Cooper & Gressman, *supra,* § 3923 at p. 62), the equitable relief sought is more than merely incidental to the legal relief sought—then the order granting or refusing a stay is not appealable.

For other endorsements of the "more than merely incidental" test see *Oasis Oil & Refining Corp. v. Armada Transport & Refining Co.,* 719 F.2d 124, 125 (5th Cir.1983); *Poriss v. Aaacon Auto Transport, Inc.,* 685 F.2d 56, 59–60 (2d Cir.1982); *Diematic Mfg. Corp. v. Packaging Industries, Inc.,* 516 F.2d 975, 978–79 (2d Cir.1975), and cases cited there. In *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.,* 651 F.2d 1244, 1249 (8th Cir.1981), the Eighth Circuit went further, holding that "for purposes of applying the *Enelow-Ettelson* rule, a complaint praying for a mix of equitable and legal relief shall be deemed equitable, unless the equitable claim is so insubstantial as to be considered frivolous." (Footnote omitted.) This goes too far; frivolousness is only one of the two relevant qualifications of the equity clean-up doctrine.

Although our test is derived from the historical analysis that informs the *Enelow-Ettelson* doctrine, it has practical virtues as well. The final-judgment rule performs the valuable office (especially at a time like the present when the courts of appeals are groaning under a staggering caseload) of limiting appeals to one per case. When interlocutory appeals are allowed there is no limit to the number of separate appeals that can be taken in the same case, and therefore, as the Supreme Court has emphasized time after time, see, e.g., *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978); *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), the exceptions to the final-judgment rule must not be interpreted broadly. See also *Shaffer v. Globe Protection, Inc.,* 721 F.2d 1121, 1123–24 (7th Cir.1983). We are mind-

ful of Intermedics' argument that it will suffer irreparable harm as a result of having to defend against Medtronic in Illinois as well as in Minnesota. But if Medtronic had asked only for equitable relief in this case Intermedics clearly would have had no right to appeal, for an order granting or refusing a stay of an equity suit is not appealable as a preliminary injunction; yet the harm to Intermedics from having to defend itself in two courts hundreds of miles apart against what it argues are the same claims would be no less. Although the presence or absence of legal claims is unrelated to the policies behind section 1292(a)(1), there is no good reason to use the presence of the legal claim in a mixed law-equity action as the handle for making an order granting or denying a stay appealable, thereby enlarging—arbitrarily—the class of interlocutory orders that a litigant can appeal as a matter of right from the district court. The nonappealability of stays in pure equity suits has not been a source of great hardship, so far as anyone has been able to determine. See 16 Wright, Miller, Cooper & Gressman, *supra,* § 3923 at p. 66.

Intermedics expresses concern about the implications of a decision against appealability on the right to jury trial in a mixed law-equity action. There are no implications. The Supreme Court held in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 507–08, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959), that if a jury trial of the legal claims is demanded in such an action those claims must be tried first in order to prevent the judge's determination of the equitable claims from having a preclusive effect, by operation of collateral estoppel, on the legal claims. True, when law and equity were separate court systems the equity court would have tried all the claims together under the clean-up doctrine, and there would have been no right to jury trial. But in construing the Seventh Amendment to the Constitution, which guarantees the right to jury trial "In [federal civil] suits at common law," the Supreme Court has decided not to take an historical approach. Maybe some day it will decide not to take

an historical approach to the question of the appealability of stays either. But if it does, it is unlikely (as we have suggested) to hold that stays are appealable as injunctions.

APPEAL DISMISSED.