The Mayor and Council of Wilmington, a Municipal Corporation of the State of Delaware, at the Instance of Joseph L. Carpenter, Jr., J. Newlin Gawthrop, and Samuel Chambers, the Board of Directors of the Street and Sewer Department for the City of Wilmington,

*vs.*

John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde and Samuel Austin.

*New Castle, March T.* 1899.

Where a bill in equity sought to restrain certain individual defendants from laying pipes in the streets of a city, and the defendants pleaded that they were engaged in laying the pipes solely and only as the officers, agents and employees of a gas company, and claimed no right to lay such pipes otherwise than through the authority and direction of said company, and that the company was not made a defendant, although it ought to have been joined as such, *held*, that the plea, having been replied to, raised the issue of the existence of the company as a legal corporation, and a necessary party, and such plea was sustained and complainants had leave to amend upon payment of costs.

Where a municipal corporation seeks to restrain the officers and agents of a gas compay from laying pipes in the streets of the city, the corporation is a necessary party defendant.

Where a plea to a bill in equity for want of proper parties is sustained, it is the settled practice of the Court of Chancery not to dismiss the bill, but to give the complainant leave to amend upon payment of costs, the cause meanwhile being ordered to stand over.

The Oxy-Hydrogen Company of Delaware, a gas light company, incorporated April 3, 1873, is an "ncorporation for public improvement" under the Constitution of 1831, which provides that no act of incorporation shall continue in force for more than twenty years without reenactment by the Legislature, "unless it be an incorporation for public improvement;" and, there being no limitation of time expressed in the Act creating it, the charter is perpetual, subject only to the constitutional reservation of the power of revocation to the Legislature.

A general Act to revive private acts and extend the time for recording the same, by notice to the Secretary of State and recording a certified copy of the act of incorporation, has no application whatever to the charter of a corporation for public improvement within the meaning of *art.* II, *sec.* 17 of the *Constitution of* 1831.

Where a corporation for public improvement is chartered without any limitation of the time of its corporate existence, it is a perpetual charter, and if, as a precautionary measure, because of doubts whether the courts would hold the charter to be perpetual, it is renewed, under a general act authorizing the extension and renewal of private acts by notice to the Secretary of State and recording the act of incorporation, the question whether the action of the corporation declaring its acceptance of the renewing act, and attempting to do the acts and things necessary to obtain the benefit of its provisions, amount to a surrender or forfeiture of the existing grant of a perpetual charter, cannot be raised collaterally, but only on *quo warranto*, in the name of the State.

The question whether the Act of February 5, 1891, "to revive private acts and extending the time of recording the same," is unconstitutional so far as it undertook to renew, as a class, the charters of corporations which had expired by limitation of time, not determined because rendered immaterial by reason of the decision that the Oxy-Hydrogen Company was an incorporation for public improvement.

As a general rule, the corporate existence of a corporation *de facto*, cannot be inquired into collaterally, but its right to exist can be determined only by *quo warranto* proceedings in the name of the State. And where an incorporation for public improvement is created by the Legislature and a regular organization and user follows, there can be no issue raised collaterally with respect to

its corporate existence. It is one of the absolutely settled prin-
ciples of corporation law that in such case, the State alone can
proceed to exact a forfeiture of the grant of corporate franchises.
The apparent exceptions, as in cases where the aid of courts is
invoked by corporations seeking to condemn land, or obtain cer-
tain other special rights, rest upon principles that in no way con-
flict with the general rule.

BILL FOR AN INJUNCTION by the City of Wilmington to
restrain the laying of gas pipes in its streets. The com-
plainants were the Mayor and Council of Wilmington, who,
at the instance of the Board of Directors of the Street and
Sewer Department ·f that City, filed a bill in equity, April 2,
1891, against the defendants, to restrain them from laying
gas pipes in the streets of the City. The defendants demurred
for want of proper parties, and the demurrer was heard by
Chancellor *ad litem*, Henry R. Johnson, who had been ap-
pointed to that office, upon the certificate of Chancellor Wol-
cott that he had been of counsel for one or more of the defend-
ants. The demurrer having been overruled by the Chan-
cellor *ad litem*,*the defendants filed their plea,with an answer
in support of the same, and replication and rejoinder were
entered and proofs taken. The plea was in substance that
the bill did not contain proper parties, inasmuch as the de-
fendants were officers, agents and employees of the Oxy-
Hydrogen Company of the State of Delaware, incorporated
and organized and authorized to build gas works and lay gas
pipes, and that the defendants were engaged in laying such
pipes solely and only as officers and agents of the said com-
pany, and claimed no right in the premises otherwise. The
plea averred that the said company was not, but should have
been a party defendant to the bill.

After the adoption of the new Constitution in 1897 an
application was made to the Chancellor, after his appoint-
ment under the new Constitution, for reinstatement of the
case upon the regular docket of the Court of Chancery, upon
the ground that by force of the Schedule to the Constitution,

*7 *Del. Ch.* 56.

the jurisdiction of the Chancellor *ad litem* was terminated. The application prevailed and such an order was made. The hearing on this motion is reported *ante p.* 147.

Prior to the hearing the complainants also presented a supplemental bill and asked leave to file the same. In support of this application they set forth that it was made necessary and desirable:

(1) Because the terms of office of some of the Directors of the Street and Sewer Department, at whose instance the suit was instituted, had expired and other persons had been appointed to fill their places.

(2) That what was previously an ordinance and regulation of the Street and Sewer Department of the City of Wilmington had since been passed and enacted by the General Assembly as a public Act, general in its requirements.

(3) That since the filing of the bill the alleged charter of the Oxy-Hydrogen Company had expired by limitation.

The cause came to a hearing in July, 1898, and further argument was had in February, 1899. The history of the case and of the successive pleadings and the material facts are stated in the opinion.

*William S. Hilles* and *Arthur W. Spruance,* for complainants.

It is elementary that a plea in equity should clearly and distinctly aver all facts necessary to constitute a complete equitable defense to the case made by the bill so far as the plea extends. *Sto. Eq. Pl. secs.* 652a, 665, 680.

It is, therefore, necessary that two material averments of the plea should be proved:

(1) A duly incorporated corporation.

(2) That it was authorized to build gas works and lay gas pipes in the streets.

The plea was filed January 30, 1894, and the Act of Incorporation was passed April 3, 1873. Though it contained no limitation of the period of existence under the *Constitution of* 1831, *art.* II, *Sec.* 17, it could not continue in force for a period longer than twenty years without re-enactment. No

action was taken under the charter for fourteen years after its passage and its existence must have expired April 2, 1893, before the filing of the plea, unless the corporate existence was continued by the attempt on January 28, 1892, to comply with the provision of 19 *Del. Laws*, *ch*. 15.

This action of the corporation could not have had that effect:

(1) Because the Act provides only for the renewal of corporations in whose charters there is a provision stating the period for a corporation to continue.

(2) This charter could not be re-enacted by a general act, but only by special enactment, without violating Sec. 17 of the Constitution.

The lack of power to incorporate by general act is a lack of power to amend or continue thereby. *San Francisco vs. Water Works*, 48 *Cal.* 493; *Ex parte Pritz*, 9 *Ia.* 30, 33; 1 *Thomp., Corp. secs.* 573, 577, 578, 581, 583, 585.

If it be admitte dthat the company was a valid and existing corporation, it did not possess, as alleged, authority "to build gas works and lay gas pipes in the streets of the City of Wilmington." When this charter was granted the complainant was a municipal corporation clothed with power *inter alia* "to enact ordinances to protect the health, to define and remove nuisances, to ascertain and fix boundaries of streets, to repair and amend the same and provide for the paving thereof, to regulate the ascent and descent of all streets,and in general to do all those things and matters for the well being of said city which shall not be in contravention with any of the laws of this State or the Constitution thereof."

It is to be presumed that the powers granted to the Oxy-Hydrogen Company were subject to the proper municipal control and not to be exercised without complying with the municipal requirements.

The control of the streets and the rights and powers over the same, and the right to make rules and regulations concerning them, which had theretofore existed in the Council, was by Act of April 20, 1887, conferred upon the Board of .

Directors of the Street and Sewer Department. 18 *Del. Laws, Ch.* 352.

Pursuant to that authority that Department, on April 9th, 1889, provided by general regulation when and how any person or corporation should be permitted to open the bed of a street.

By Act of May 14, 1891, passed before the attempted continuance of its corporate franchise by the Oxy-Hydrogen Company, the Legislature prohibited the opening or excavation of any highway in this State, in a city, town or village for the purpose of laying or placing wires or other conductors therein, without first obtaining the consent of the municipal authorities. 19 *Del. Laws, ch.* 224.

It nowhere appears in the proofs that the company has complied with the requirements of this regulation of the Street and Sewer Department, or of the Act of Assembly.

It cannot be questioned that corporations are subject to the restraints of the general laws and police regulations, which are to be read into their charters, and must obey them to the same extent as is required of individuals, unless they are expressly and constitutionally exempted from their operations. *Relfe vs. Randle*, 103 *U. S.*, 222; *Republican &c. Co. vs. Brown*, 7 *C. C. A.*, 412; *Wiggans Ferry Co. vs. East St. Louis*, 102 *Ill.* 560; *Pratt vs. Railway*, 42 *Maine* 579; *French vs. Commonwealth &c. Co.*, 145 *Mass.* 261; *Worcester &c. R. R. vs. Nashua*, 63 *N. H.* 593, 596; *Talmage vs. Pell*, 7 *N. Y.* 328, 340; *Tyng. vs. Commercial &c. Co.*, 58 *N. Y.* 313; *Morawetz, Corp.* 1061, 1091; 7 *Am. Encyc. Law*, 710; *Sutherland, Stat. Constr. sec.* 283.

There is no constitutional restraint upon the Legislative power, either in the Fourteenth Amendment to the Constitution of the United States, or elsewhere, to prevent the passage of such a law. *Mugler vs. Kansas*, 123 *U. S.* 623, 663; *New Orleans &c. Co. vs. Louisiana Co.*, 115 *U. S.* 650, 671, 672; *Munn vs. Illinois.* 94 *U. S.* 113; this case has been followed consistently by others holding that the Legislature may fix the price of gas, water, elevator charges, railroad charges, &c., *Spring Valley Water Works Co. vs. Schottler,*

110 *U. S.* 347; *R. R. Commission cases*, 116 *U. S.* 307; *Dow vs. Beidleman*, 125 *U. S.* 680; *Georgia &c. R. R. vs. Smith*, 128 *U. S.* 174, 180; *State vs. Gas. Co.*, 34 *O. St.* 572; *Zanesville vs. Gas Light Co.*, 47 *O. St.* 1; *State vs. Milwaukee &c. Co.*, 29 *Wis.* 454; *State vs. Laclede Gas Co.*, 130 *Mo.* 572, 31 *S. W.* 594; *Philadelphia Co. vs. Freeport*, 157 *Pa. St.* 279; *Philadelphia vs. Reading R. R., printed opinion; New York vs. Squire*, 145 *U. S.* 175.

Gas companies have been expressly held to be subject to this doctrine. *New Orleans &c. Gas Co. vs. Louisiana &c. Gas Co.*, 115 *U. S.* 650; *Gibbs vs. Baltimore Gas Co.*, 130 *U. S.* 396, 408; *Chicago &c. Gas Co. vs. Peoples &c. Gas Co.*, 121 *Ill.* 530.

We contend that the question of the corporate existence of the Oxy-Hydrogen Company is a matter necessary and proper to be determined in this Court:

(1) The question is *res judicata* in this case. The question of corporate existence was involved in the argument on demurrer, and the decision thereon necessarily assumed that the questions raised by the bill and the pleadings were proper for the decision of this Court.

(2) Upon the plea and answer now filed, the record raises the direct question of the existence and powers of this corporation, and it is submitted that as the defendants justified their action as having been under the authority of an act of incorporation, and the powers thereby granted, the question must be determined by the Court in this case. *Owen vs. Sheppard*, 8 *C. C. A.* 244; *Montgomery vs. Forbes*, 148 *Mass.* 249; *Hill vs. Beach*, 12 *N. J. Eq.* 31; *Gas Co. vs. Dwight*, 29 *N. J. Eq.* 242, 244; *Booth vs. Wonderly*, 36 *N. J. L.* 250.

(3) The reasons generally given for recognition of *de facto* corporations do not apply here, because a *de facto* corporation cannot exist without some law authorizing its formation. 1 *Thomp. Corp.* sec. 505; 2 *id.* sec. 1851; 2 *Morawetz, Corp.* sec. 777; 2 *Cook, Corp.* 637.

The question here is not of irregular or improper organization, but whether the corporation can exist under any law

of this State. We submit that it cannot, because the charter has expired by constitutional limitation and has not been revived. In such cases corporate existence can always be questioned in any proceeding. 6 *Thomp., Corp. secs.* 7658 *to* 7670.

Even if the Court should consider that there are some elements of a *de facto* corporation, the general rule that such a corporation is sufficient does not apply. The defendants here claim rights in the streets of the City, which are under the control of complainant, and these rights they may claim only by a valid legislative grant. Since, therefore, the very right itself depends upon the existence of corporate author- ity, which is of necessity a condition precedent, and exercise of that right, the existence of the corporation may be ques- tioned wherever and whenever a right is claimed, which can only arise by virtue of its existence. *New York &c. Co. vs. New York*, 104 *N. Y.* 1; *Piper vs. Rhoads*, 30 *Ind.* 309; *Railroad vs. Sullivant*, 5 *O. St.* 276; *Atkinson vs. Railroad Co.*, 15 *O. St.* 32; 1 *Thomp. Corp.* 502, 511; 6 *Thomp. Corp. sec.* 7660; 2 *Morawetz, Corp. secs.* 768, 1005; *In re Brooklyn &c. Ry. Co.*, 72 *N. Y.* 245; *Company vs. Mayor*, 104 *N. Y.* 1; *Re Brooklyn*, 75 *N. Y.* 335; *In the matter of Brooklyn, Win- field and Newton Ry. Co.*, 81 *N. Y.* 69; *Brooklyn &c. Co. vs. Brooklyn*, 78 *N. Y.* 524; *In re Railroad Co.*, 35 *Hun* 220, *affd.* 99 *N. Y.* 12.

Leave to file the supplemental bill should be granted for the reasons suggested in the application.

Where there are any imperfections in a bill which can- not be reached by amendment, and especially where they have occurred after the institution of the suit, a supplemental bill is the appropriate remedy to bring the matter before the Court. *Sto. Eq. Pl. secs.* 332, 335, 336, 340a; *Beach, Mod. Eq. Prac. secs.* 493, 494; 2 *Dan. Ch. Pr.* 1515; *Malcolm vs. Scott*, 3 *Hare* 39; *Pinkus vs. Peters*, 5 *Beav.* 253; *Mitf. Eq. Pl.* (*Tyler's Ed.*) 159, 160.

Such a bill may be filed at any time, either before or after a decree. *Id.* 160, 161; *Beach, Mod. Eq. Pr. sec.* 490; *Sto. Eq. Pl. sec.* 338; *Dan. Ch. Prac.* 1533, *Note* 1.

In *Crumpton vs. Wombell*, 4 *Sim.*, 627, the new parties were added after the cause was set down for hearing.

Although a party may not file a supplemental bill without permission of the Court, leave is usually granted on an *ex parte* application. If there is proper cause for filing it, the leave will be granted of course, and the Court only examines the question so far as to see that the privilege is not abused for the purpose of delay and vexation to the defendant. *Eager vs. Price*, 2 *Paige* 333.

Upon arguing a plea alleging a want of proper parties the usual practice is, instead of allowing it, to give the complainant leave to amend the bill upon payment of costs, which liberty he may also obtain even if the plea be allowed according to the common course of the Court, for a suit is not determined by the allowance of such a plea. *Sto. Eq. Pl. sec.* 745; *Mitf. Eq. Pl. (Tyler's Ed.)* 367; *Stafford vs. London*, 1 *P. Wms.* 428; *Cook vs. Mancius*, 3 *Johns. Ch.* 427; 1 *Dan. Ch. Prac.* 698, 699.

It was said by Chancellor Bates, in the case of *Satterthwait vs. Marshall*, 4 *Del. Ch.* 337, 357:

"I may add that the objection of the want of a party is never in the absence of gross *laches*, a fatal one. Whenever justice so requires, the Court will allow a necessary party to be made even after a hearing, upon just terms. This mode of amendment is liberally allowed."

*Herbert H. Ward, Austin Harrington* and *C. Berkeley Taylor*, for respondents.

The respondents are concerned only in showing that the corporation under whose authority they claim to act was a *de facto* corporation; they are not concerned in the question whether it was also *de jure*.

The requisites of a *de facto* corporation are three. A charter or general law under which it might be organized, an attempt to organize, and an actual *user* of the corporate franchises. *Snider's Sons Co. vs. Troy*, 91 *Ala.* 224; *Johnson vs. Okerstrom*, 70 *Minn.* 303, 73 *N. W.* 147; *Gibb's Estate*, 157

*Pa. St.* 59; *Vannerman vs. Young,* 52 *N. J. L.* 403; *Lamming vs. Galusha,* 81 *Hun* 247, *affd.* 151 *N. Y.* 648.

These elements having been shown to exist, the legality of the incorporation cannot be questioned in collateral proceedings; this can be inquired of only by the State. *Whitney vs. Wyman,* 101 *U. S.* 392; *Shapley vs. San Angelo,* 167 *U. S.* 646; *Rondell vs. Fay,* 32 *Cal.* 354; *Humphries vs. Mooney,* 5 *Col.* 282; *Crenshaw vs. Ulman,* 113 *Mo.* 633; *Smith vs. Mayfield,* 163 *Ill.* 447; *Saunders vs. Farmer,* 62 *N. H.* 572; *Cochran vs. Arnold,* 58 *Pa. St.* 399; *Lamming vs. Galusha,* 81 *Hun* 247, *affd.* 151 *N. Y.* 648; *Kleckner vs. Turk,* 45 *Neb.* 176, 188; *Johnson vs. Okerstrom, supra.*

The recital of the Act to revive private corporations was not made for the purpose of raising any question of the *de jure* existence of the company, but, simply, that having established a *de facto* corporation, the extension of the period of its existence should also be shown in case it were held that the renewal of the charter was necessary. In two cases acts extending the existence of the corporation were treated as having been read into the charters. *B. W. & N. R. R. vs. Broadway Ry. Co.,* 72 *N. Y.,* 245; *Brooklyn S. T. Co. vs. Brooklyn,* 78 *N. Y.,* 524.

We contend that this corporation was one for public improvement and its term perpetual.

Where the charter does not limit the corporate existence to a definite period, it continues in existence in legal contemplation, until legally dissolved. *Morawetz, Corp. sec.* 411; *Thomp. Corp. secs.* 209, 210.

The words of the *Constitution of* 1831, *art.* 2, *sec.* 17, excepting incorporations for public improvement from the limitation of corporate life to twenty years, are operative as a part of the charter of the Oxy-Hydrogen Company as if incorporated into it. *Endlich on Statutes sec.* 56, 57, 181; *Delaware R. R. Co. vs. Tharp,* 5 *Harring.* 454, 456; *Tomlinson vs. Jessup,* 15 *Wall.* 454, 457; *State vs. Person,* 32 *N. J. L.* 134, 135–6; *Billingsley vs. State,* 14 *Md.* 369; *Johnson's Case,* 1 *Greenl.* 230; *Bradley vs. Reppell,* 32 *S. W.* 645, 648.

The reasons for distinction between the common business corporation and one for public improvement are obvious:

(1) The public are interested in the permanency of matters tending to their general safety and comfort.

(2) The expenditures by such corporations are for plants useful only for purposes and in places of public convenience.

(3) The permanence of the investment is the inducement to capital in such works.

All of these reasons are applied to a gas company, and the incorporation of the Oxy-Hydrogen Company must be held to be one for public improvement. *Sec. 1 of Charter; New Orleans Gas Co. vs. Louisiana Light Co.*, 115 *U. S.* 650, 658–9, 665, 669–70; *New Orleans Water Works Co. vs. Rivers*, 115 *U. S.* 683, 692–3, 699; *New Orleans vs. Clark*, 95 *U. S.* 644, 652; *State vs. Milwaukee Gas Co.*, 29 *Wis.* 454, 459–60.

Out of abundant caution corporate action was taken under the Act to revive private corporations and extend the time for recording, passed February 5, 1891. If the charter is perpetual this was unnecessary, but, if so, was mere surplusage, although in the absence of judicial construction of the words of the Constitution, it was prudent. If, on the contrary, the charter be not perpetual, this action saved the rights of the company under the law.

No amendment can be permitted so as to bring the Oxy-Hydrogen Company before the Court while the injunction stands, since the company, if to be affected by that injunction, has a right to a hearing. *Elkins vs. Camden, etc., R. R. Co.*, 36 *N. J. Eq.* 241; *Morgan vs. Rose*, 22 *N. J. Eq.* 583; *Brooklyn vs. Brooklyn C. R. R. Co.*, 47 *N. Y.* 475; *Hoppocks vs. Chambers*, 56 *N. W.* 86; *Beach, Inj. sec.* 373.

The joinder of improper parties may be taken advantage of in equity by way of a plea. *Robinson vs. Smith*, 3 *Paige* 222; *Sto. Eq. Pl. sec.* 237; *Cooper's Eq. Pl. sec.* 42; 1 *Barton Ch. Pr. sec.* 78.

Such a plea is in bar. *Sto. Eq. Pl. sec.* 734. So also is a plea for want of interest in defendant. *Mitf. Ch. Pl.* 220.

Where there is no statement or charge in the bill which affords an equitable circumstance in favor of complainant's

case against the matter pleaded (such as fraud or lack of organization) that statement or charge must be denied by way of answer. as well as averment in plea. *Plummer vs. May,* 1 *Ves.* 426; *Jennison's Ch. Pr.* 74; 1 *Dan. Ch. Pr.* 615; *Sto. Eq. Pl. sec.* 669, 670; *Wheeler vs. Piper,* 3 *Jones Eq.* 249; *Adams, Eq.* 342.

An answer in support of a plea is no part of the defense. The defense is the matter set up by the plea.   The answer is that evidence which the complainant has a right to require and use to invalidate the defense made by the plea. and the complainant is entitled to make use of it, not only upon the hearing of the cause upon the issue raised by the plea, after the plea shall have been decided to be a good bar  upon argument, but upon argument of the plea itself. *Barb. Ch. Pr.* 128; *Mitf. Eq.* 244 *note; Hillyard vs. Cressy,* 3 *Atk.* 303; *Honey vs. Honey,* 1 *Sim. & Stu.* 569.

If the complainant without an argument thinks the plea, though good in form or substance, not true in point of fact, he may take issue upon it by filing a replication, which admits the plea to be good. *Mitf. Eq. Pl.* 301, 302; *Harris vs. Ingledew,* 3 *Peere Wms.* 95; *Daniels vs. Taggart,* 1 *Gill & J.* 311.

When issue is thus taken upon the plea the defendant must prove the facts it states.  If he succeeds in proving the matter pleaded, the suit, so far as the plea extends, is barred. *Wichalse vs. Short,* 3 *Bro. P. C.* 558; *Daniels vs. Taggart, supra; Fish vs. Miller,* 5 *Paige*  26; *Bogardus vs. Church,* 4 *Paige* 178; *Nobkisson vs. Hastings,* 2 *Ves. Jr.* 84; *Watkins vs. Stone,* 2 *Sim. & Stu.* 560; *Dan. Ch. Pr.*  698.

In the present case the Oxy-Hydrogen Company was undoubtedly duly organized, and had the right to lay pipes in the streets of the City, and the defendants in this bill were simply the authorized officers and agents of the company. The bill, therefore, and the injunction founded upon it cannot be sustained, the company never having had its day in court.

Upon a bill for injunction to restrain a city from paying salaries it was held not enough that the officers were joined

in the suit, the city should also be joined. 6 *Am. & Eng. Enc. L.* 746; *Samis vs. King*, 40 *Conn.* 298, 312; *Allen vs. Turner*, 11 *Gray* 436.

So where the officers of an insurance company had obtained by judgment moneys of the company, it was held that the company must be joined. *Lyman vs. Bonney*, 101 *Mass.* 562; *Inhabitants vs. Nims*, 110 *Mass.* 115; *Walker vs. Hallett*, 1 *Ala.* 379; *Ribon vs. Railroad Co.*, 16 *Wall.* 446, 450; *Deth vs. Bank*, 1 *Clark*, 282; *Charleston vs. Sebring*, 5 *Rich. Eq.* 342.

The application for leave to file a supplemental bill should not be granted.

If the original bill is wholly defective, so that no valid decree could be made thereon, the party cannot, by filing a supplemental bill, founded upon matters which have subsequently taken place, sustain the proceedings originally commenced. *Candler vs. Pettit*, 1 *Paige* 168, 169; *Edgar vs. Clevenger et al.*, 2 *Green Ch.* 258, 260; *Winne vs. Albert*, 2 *Md. Ch.* 42, 47–48; *Godfrey vs. Tucker*, 33 *Beav.* 280, 284; *Byrne vs. Byrne*, 2 *Dru. & War.* 71, 74, 76; *Jaques vs. Hall*, 3 *Gray* 194, 196, *etc.*; *Pinch vs. Anthony*, 92 *Mass.* (10 *Allen*) 470, 477. If the complainant had no ground for the proceedings, originally, he should file a new bill, showing a case which then entitles him to equitable relief; but·if complainant's original bill was sufficient to entitle him to one kind of relief, and facts subsequently occur which entitle him to other or more extensive relief, he may have such relief by setting out such *new matter* in the form of a supplemental bill. *Candler vs. Pettit, supra.*

After a cause is at issue, and an order to take testimony passed, it is too late to file a supplemental bill, setting forth matter known, or which ought to have been known, to the party before such order. *Dias vs. Merle*, 4 *Paige* 259, 261.

It is not pertinent to allege dissolution of corporation, after the lapse of time stipulated in its charter, in order to make a case against certain defendants, who were improper defendants at the time suit was brought, because of the existence of the corporation. *Vaughn vs. Vaughn*, 30 *Ala.* 392.

*William S. Hilles*, for complainant in reply.

The argument for the defendants seems to overlook the fundamental rule of pleading,.in equity as well as at law, that a plea of any kind must be taken most strongly against the party offering it. This in itself would be a complete answer to the argument. We may apply the maxim *ambiguum plac- itum interpretari debet contra proferentum. Sto. Eq. Pl. sec.* 665.

If the averment, that the Oxy-Hydrogen Company is properly authorized to build gas works and lay gas pipes in the streets of the City of Wilmington, is necessary to the suf- ficiency of the plea, it should be supported by proof, and it must be remembered that the Oxy-Hydrogen Company is not bound and cannot be bound by any decree given in this case.

The defendants were engaged in tearing up the streets of this City, and, by the proper corporate authorities, it is sought to enjoin them from so doing. They have invoked the protection of the corporate franchises alleged to have been conferred upon the Oxy-Hydrogen Company, and the duty devolves upon them to sustain such allegation, and it is no answer to state that the plea is either double or inconsis- tent. If it be double, it was the privilege of the complainant to object to it on that ground, but since it has not done so, the defendants cannot avail themselves of any defect in their own plea. *Beach. Mod. Eq. Prac. sec.* 296.

The rule that a plea may be allowed in part, applies only to its extent, that is to so much of the bill as is covered by it and not to the ground of defense set up, and if any part of the defense, made by the plea, is bad the whole must be overruled. *Dan. Ch. Prac.*, 611, 612; *Dows vs. McMichael*, 6 *Paige*, 139; *Beach Mod. Eq. Prac. sec.* 630.

It is an unwarranted use of the answer to consider it as a part of the defense made by the plea. Whether an answer in this case is proper or not, it is now too late to consider, but it is, in such a case, always subsidiary to the purposes of the plea; *Sto. Eq. Pl. secs.* 670, 671, 673, and 697, and is never

any part of the defense made by it; 1 *Dan. Ch. Prac.* 624.

It is to be considered that the complainant has not set this plea down for argument, for it is sufficient in law to have joined issue on it, as to the facts therein alleged. It is therefore incumbent upon the defendants to establish the truth of that plea as pleaded, and this is the only matter before the Chancellor, for where issue is taken upon a plea the truth of the plea is the only subject in question remaining so far as the plea extends, and nothing but the matters contained in the plea, as to so much of the bill as the plea covers, is in issue between the parties. If therefore issue is thus taken upon the plea, the defendants must prove the facts it suggests. *Sto. Eq. Pl. sec.* 697; *Mitf. Eq. Pl.* (*by Jeremy*) 301, 302; *Hughes vs. Blake*, 6 *Wheat.* 450; *Rhode Island vs. Massachusetts*, 14 *Peters*, 210, 251.

In this connection it will be further noticed that the allegations of the bill are that the Oxy-Hydrogen Company has not the powers which the plea alleges that it possesses, and that the existence of these powers is directly in issue on the pleadings in the case.

THE CHANCELLOR:—

This cause is brought to a hearing before me upon bill, plea, answer in support of plea, replication, and proofs.

The substance of the plea is that the bill does not contain proper parties. It alleges that the respondents named in the bill are the officers, agents, and employees of the Oxy-Hydrogen Company of the State of Delaware; "that the said company is a duly incorporated corporation of the State of Delaware, duly organized under its charter, and properly authorized to build gas works and lay gas pipes in the streets of the city of Wilmington; that the said defendants above named were engaged in the laying of pipes, as set out in the bill of complaint, solely and only as the officers, agents, and employees of the said Oxy-Hydrogen Company of the State of Delaware, and claim no right to lay such pipes save and only by and through the authority and direction of the said Oxy-Hydrogen Company of the State of Delaware, yet the said complain-

ant has not made the said Oxy-Hydrogen Company of the State of Delaware a party defendant to the said bill, although said Oxy-Hydrogen Company of the State of Delaware ought to have been made a defendant."

This plea, if found to be sustained by the answer and proofs in the cause, discloses a fatal objection to the bill as it now stands, and would entitle the respondents to a decree dismissing the bill, or an order, in accordance with the established precedents of the Court of Chancery in such cases, for the cause to stand over, with liberty to the complainants to amend their bill by making the Oxy-Hydrogen Company of the State of Delaware a party.

The defense made by that plea has been already made in the progress of this cause by demurrer, and the demurrer overruled by Chancellor *ad litem*, Henry R. Johnson. The Chancellor *ad litem*, in his opinion overruling the demurrer, analyzed the case as it was presented to him, and reviewed the allegations of the bill; but there is so much that is exceptional in the history of this cause, and in the manner in which the complicated and important questions it involves have been presented to the Court, that it is impossible to arrive at a clear comprehension of the issues actually presented at this stage of the long litigation, without a review of the whole case from the filing of the bill.

The complainants, the Mayor and Council of Wilmington, at the instance of Joseph L. Carpenter, Jr., J. Newlin Gawthrop, and Samuel Chambers, the Board of Directors of the Street and Sewer Department for the City of Wilmington, filed a bill in equity on the 2d day of April, 1891, against the defendants, John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde, and Samuel Austin.

The bill, after alleging the incorporation of the complainants and their powers over the streets of the City of Wilmington, the organization and powers of the Street and Sewer Department, and the rules and regulations prescribed by them, which are annexed and made a part of the bill, alleges as follows:

" (5) That the said Board of Directors of the Street and Sewer Department on the 30th day of March, A. D. 1891, was notified, in writing, by the counsel of certain persons, designated as the 'Oxy-Hydrogen Company of the State of Delaware,' that it was the intention of said alleged company on the day following, to wit, on the 31st day of March, A. D. 1891, to begin the laying of gas pipe in the streets of said City; a full and true copy of which said notice is hereto annexed, marked 'B,' and your orators pray that the same may be taken and considered as a part of this bill of complaint.

" (6) That afterwards, to wit, on the day and year last aforesaid, pursuant to said notice, said defendants, John Edward Addicks, John G. Baker, Frederick P. Addicks, Simon B. Conde, and Samuel· Austin, together with sundry other persons to your orator unknown, claiming to be officers, servants, or agents of said alleged Oxy-Hydrogen Company of the State of Delaware, unlawfully, and without the permission of the said Board of Directors of the Street and Sewer Department, and without first making application to said Board for such permisson, pursuant to the aforesaid rules and regulations of said Board, entered upon, opened, and excavated a certain street of said City known as 'Liberty Street,' for the purpose of laying gas pipes therein, and still continue engaged in the opening and excavation of said Street for the purpose aforesaid, and threaten and intend to enter upon, open, and excavate other streets of said City for the purpose of laying gas pipes therein.

" (7) That said defendants claim and pretend that they were and are authorized and empowered to enter upon, open, and excavate any and all streets of said City for the purpose of laying gas pipes therein under and by virtue of the charter of the said alleged Oxy-Hydrogen Company of the State of Delaware, without the consent or permission of said Board of Directors of the Street and Sewer Department, and without making any application to said Board, as required by the aforesaid rules or regulations of said Board.

" (8) That an act of incorporation entitled· 'An act to incorporate the Oxy-Hydrogen Company of the State of Del-

aware was passed by the General Assembly of this State on the 3d day of April, A. D. 1873, a copy of which said act, marked 'C,' is hereto annexed, which your orator prays may be taken and considered as part of this bill of complaint, under which said act the said defendants claimed to be acting as aforesaid; but your orator is informed, believes and charges that no legal or valid organization of said company has ever been effected, and your orator denies that under, or by virtue of said act of incorporation, the said defendants, or any of them, have any right or authority to enter upon, open, or excavate any of the streets of said city for the purpose of laying gas pipes therein.

"(9) That your orator is advised, believes, and avers that the said alleged Oxy-Hydrogen Company of the State of Delaware has not, and even if possessing a legal organization would not have, any right or authority, under the said act of incorporation, without the permission of said Board of Directors of the Street and Sewer Department, to enter upon, open, or excavate any of the streets of said city for the purpose of laying gas pipes therein.

"(10) That, before the expenditure by or on behalf of the said alleged Oxy-Hydrogen Company of the State of Delaware of any money in or for the prosecution of the business for which said charter was granted, said Board of Directors of the Street and Sewer Department became possessed of and vested with entire jurisdiction and control of the streets of said city, as hereinabove set forth; and the power granted by said charter to said company to lay gas pipes in the streets in this State was thereby subordinated to the paramount power and authority of said Board to control the streets of said City and to prescribe and regulate the use thereof.

"(11) That the opening and excavating of the streets of said City, as threatened and intended by the said defendants as aforesaid, would, in the opinion of your orator, be inexpedient, and in the highest degree detrimental to the health, convenience, and welfare of the public.

"(12) That on the 31st day of March, A. D. 1891, the said Board of Directors of the Street and Sewer Department

unanimously adopted certain preambles and a resolution, whereby, among other things, the City Solicitor of said City and the special counsel of said Board were instructed forthwith to institute such proceedings as they might deem necessary or expedient to restrain and prevent the aforesaid threatened and intended unlawful use of the streets of said City, and the special counsel of said Board were instructed forthwith to institute such proceedings as they might deem necessary or expedient to restrain and prevent the aforesaid threatened and intended unlawful use of the streets of said City or any of them, and said City Solicitor and special counsel were further instructed to request the Mayor of said City to co-operate with said Board in said proceedings, and for this purpose to execute, under his hand and the seal of the Mayor and Council of Wilmington, such papers as might be necessary or proper in the premises, as will more fully appear by a copy of said preamble and resolutions hereto annexed, marked 'D,' which your orator prays may be taken and considered as part of this bill of complaint.

"(13) That heretofore, to wit, on the 1st day of April, A. D. 1891, copies of the aforesaid preamble, and resolution of said Board were delivered, respectively, to the counsel of the said alleged Oxy-Hydrogen Company of the State of Delaware, and to the said defendant John G. Baker, who claims to be the president thereof, yet. the said defendants persist in their wrongful and illegal opening and excavating of the streets of said city as aforesaid.

"(14) That, as your orator is advised and believes, it has no adequate remedy in the premises, save by the interposition of this Honorable Court."

The second prayer of the bill is as follows:

"(2) That the defendants, and every of them, their servants, agents, and employees, and all persons claiming to be servants, agents, or employees of the said alleged Oxy-Hydrogen Company of the State of Delaware, may be perpetually restrained by the injunction of this Honorable Court from further opening or excavating, or causing to be opened or

excavated, any of the streets of the City of Wilmington afore-said, for the purpose of laying gas pipes therein, without the permission first had and obtained of the said Board of Direc-tors of the Street and Sewer Department for the City of Wil-mington; and also that a preliminary injunction may issue to restrain the said defendants, and every of them, their servants, agents [and employees, and all persons claiming to be servants, agents, or employees of the said alleged Oxy-Hydrogen Company of the State of Delaware, in like manner, until the further order of the Chancellor."

On the same day—that is, the 2d day of April, 1891—a preliminary injunction was granted as prayed for, by the late Chancellor Saulsbury, in the words following, viz.: "And now, to wit, this 2d day of April, 1891, the within bill having been read and considered, it is ordered and decreed by the Chancellor that a preliminary injunction issue according to the prayer of the within bill, restraining, until the further order of the Chancellor, the defendants and every of them, their servants, agents, and employees, and all persons claim-ing to be servants, agents, or employees of the said alleged Oxy-Hydrogen Company of the State of Delaware, from further opening or excavating, or causing to be opened or excavated, any of the streets of the City of Wilmington for the purpose of laying gas pipes therein, without the permis-sion first had and obtained of the Board of Directors of the Street and Sewer Department of the City of Wilmington. Injunction bond to be taken in the sum of ten thousand dol-lars, and Joseph L. Carpenter, Jr., of the City of Wilmington, approved as surety."

On the 4th day of May, 1891, Chancellor Saulsbury, upon application made on behalf of the said defendants, granted a rule upon complainants to appear before him at Dover, on the 11th day of May, and show cause why the bill should not be dismissed for alleged informality and irregularity. After a hearing upon the said rule, the rule was discharged, the pre-liminary injunction continued until further order of the Chan-cellor, and leave granted to amend the bill. Upon the 6th

day of June the amendments were filed according to the order of the Chancellor, and as so amended, the bill now stands.

After this, the defendants allowed more than two years to elapse without pleading or demurring. In the meantime the late Chancellor Saulsbury died, and on the 5th day of May, 1892, the Honorable James L. Wolcott was appointed Chancellor to succeed him. Owing to the fact that Chancellor Wolcott had been of counsel for one of the defendants, the Honorable Henry R. Johnson was appointed Chancellor *ad litem* to hear and determine this cause. On the 28th day of June, 1893, the defendants filed their demurrer to the bill, as above stated, and set forth for cause of demurrer that "it appears by said complainants' bill that the Oxy-Hydrogen Company of the State of Delaware therein named, is a necessary party to the said bill, inasmuch as it is therein stated, in the fifth paragraph thereof, that the said Oxy-Hydrogen Company of the State of Delaware, by its counsel, had notified the Board of Directors of the Street and Sewer Department that it was its intention, on the 31st day of March, A. D. 1891, to begin laying gas pipes in the streets of the said City of Wilmington; that, by the sixth paragraph thereof, it is further alleged that the present defendants claim to be officers, servants, and agents of said company in the opening and excavation of Liberty Street, in said City, as therein set forth; that, by the seventh and eighth paragraphs of said bill, it appears that the said company was incorporated by an act of the General Assembly of the State of Delaware, a copy of which act is to said bill attached, and that said defendants claim to be acting thereunder; that, by the ninth paragraph and other paragraphs of said bill, it is alleged that, even if said company is possessed of a legal organization, it would not have any right or authority under said act, without the permission of said Board of Directors of the Street and Sewer Department, to enter upon, open, or excavate any of the streets of said City for the purpose of laying gas pipes therein; that it further generally appears by said bill that the whole scope and object of said bill is the determination of the rights and powers of said company under the said char-

ter to lay gas pipes in the streets of said City of Wilmington, and that the result and effect of said suit will be to judicially determine the rights and powers of said company under its said charter, but the said complainant has not made the Oxy-Hydrogen Company of the State of Delaware a party to said bill."

After hearing arguments of counsel, the Chancellor *ad litem* rendered his decision, overruling the demurrer, on the 24th day of November, 1893, and in his opinion said as follows: "It is undoubtedly true that whenever a want of proper parties appears on the face of the bill, the proper mode to take advantage of the objection is by a demurrer. *Mitf. Ch. Pl. & Prac.* 206.

"Does it appear on the face of the bill filed in this cause that the complainant has failed or omitted to make a party defendant who ought to have been made such?

"While it is true that the complainant in certain paragraphs of the bill, which are fully set forth above, refers to a certain alleged corporation, called the Oxy-Hydrogen Company of the State of Delaware, yet at the same time [it] in no way recognizes in said paragraph, or in any other parts of the bill, the valid or legal existence of such a corporation as the Oxy-Hydrogen Company of the State of Delaware, but on the contrary, expressly charges that no legal or valid organization of said company has ever been effected. It nowhere appearing on the face of the bill that there is in existence a corporation possessing a valid legal organization by the name of the Oxy-Hydrogen Company of the State of Delaware, but a corporation by that name, possessing a legal or valid organization, being expressly denied by the bill, I do not see how a demurrer for want of proper parties would properly lie.

"By demurring to the bill instead of adopting some other course of pleading, the defendants have necessarily admitted the proof of the matters and facts contained in the bill, and as it is alleged in the bill that no legal or valid organization of the said Oxy-Hydrogen Company of the State of Delaware

has ever been effected, the effect of the demurrer is to admit the truth of such allegation.

"If it is the object and purpose of the defendants to controvert the allegations contained in the bill, they should do so by some other mode of pleading than by demurring.

"As it is my opinion that this demurrer should be overruled for the reason above given, I have not thought it necessary to deal with many of the questions discussed at the argument, especially as most of them will more appropriately arise at some subsequent stage of the cause, when the cause shall be at issue upon the proper pleading.

"The demurrer must be overruled, and leave is granted to the defendants to plead or answer."*

Upon the 13th of January, 1894, the defendants filed the plea which I have cited above, and an answer in support of the plea, setting up the same defense in another form. To this plea the complainant replied, filing its replication *gratis*, on the 14th of March, 1894. A rule for commissions on both sides was entered, Samuel A. Macallister being appointed examiner to take testimony, and the cause subsequently came to a hearing before Chancellor *ad litem,* Johnson. Before he had rendered his decision in the cause, a Constitutional Convention was held in the State of Delaware, and a new Constitution went into effect on the 10th day of June, 1897. This Constitution provided, in section 9 of the Schedule, as follows:

"All the Courts of Justice now existing shall continue with their present jurisdiction, and the Chancellor and Judges shall continue in office until the tenth day of June, in the year one thousand eight hundred and ninety-seven, upon which day the said Courts shall be abolished, and the offices of the said Chancellor and Judges shall expire."

Upon the 10th day of June, 1897, I was duly appointed Chancellor under the new Constitution, and thereupon the defendants filed in the Court of Chancery a petition praying that this cause should be re-instated upon the regular docket

---

*This opinion has since been reported, 7 *Del. Ch.* 56.

of the Court, and a day appointed for the rehearing of the cause by the Chancellor, upon the ground that the office and duties of the said Chancellor *ad litem* had been abolished by the Constitution of the State of Delaware recently adopted, and there was no legal or equitable reason why the present Chancellor should not take cognizance of the cause.

Upon this petition, I ordered a rule to issue, directed to the Mayor and Council of Wilmington, and William Simmons, William A. Pratt, and Ayers S. Webster, at that time members of the Street and Sewer Department for the City of Wilmington, the complainant in the cause, and to the Honorable Henry R. Johnson, the said Chancellor *ad litem*, requiring them to show cause why the said cause should not be reinstated upon the regular docket of the Court, and a day appointed for a rehearing before the Chancellor. This rule was made returnable on the 13th day of September, A. D. 1897.

After hearing argument of counsel for the respective parties, I granted the prayer of the petition, and on the 11th day of October, 1897, ordered the case put upon the regular calendar. *Ante p.* 147.

The cause first came to a hearing before me in July, 1898. Supplementary briefs were afterwards filed by consent of counsel on both sides, and a further argument had in February, 1899, on points not discussed by counsel in their former arguments or briefs, and upon which counsel on both sides desired to be heard before a decision should be rendered. The briefs filed and the arguments made by the numerous counsel engaged in this cause during the eight years of litigation so abnormally prolonged, constitute, when taken together (and they are all submitted to me by consent of counsel), a veritable monument of industry and legal research. Although these briefs and arguments are both interesting and instructive, yet they contain much that would only be considered in *quo warranto* proceedings, and much that would only be relevant upon pleadings which brought the cause before the Court upon its merits, for final decision.

Several cases analagous to the present one, in the one respect that the attempt has been made to enjoin persons as

individuals from performing acts which they sought to justify on the ground that they were acting as officers of a corporation whose valid existence was denied, have been decided by the Court of Chancery of New Jersey, and by the courts of New York, sitting as courts of equity, and have been cited and discussed at length by counsel. *In re Brooklyn, W. & N. Ry. Co.*, 72 *N. Y.* 245, 75 *N. Y.* 335; *Brooklyn Steam Transit Co. vs. City of Brooktyn*, 78 *N. Y.* 524; *New York Cable Co. vs. Mayor, etc., of New York*, 104 *N. Y.* 1, 10 *N. E.* 332; *In re New York, L. & W. Ry. Co.*, 35 *Hun.* 226; 99 *N. Y.* 12, 1 *N. E.* 27; *Gas Co. vs. Dwight*, 29 *N. J. Eq.* 244. But all these cases came before the courts upon bill and answer for a hearing on the merits, and the courts proceeded to decide finally upon the merits.

In the cause before me, however, the defendants, instead of answering, have chosen to file a plea of want of parties,—a mode of pleading rare in this jurisdiction, but one for which there is abundant English authority, controlling in the Court of Chancery of Delaware, and furnishing precedents by which the rules and principles governing the plea are well established and defined. Mitford says: "Though a plaintiff may be fully entitled to the relief he prays, and the defendant may have no claim to the protection of the court, which ought to prevent its interference, yet the defendant may object to the bill if it is deficient to answer the purpose of complete justice. This is usually for want of proper parties, and, if the defect is not apparent on the face of the bill, the defendant may plead the matter necessary to show it." *Mitf. Ch. Pl. & Prac. (6th Am. from 5th Eng. Ed.)* 324, *(marginal* 280). He further says *(page* 353): "If the plea is, upon argument, held to be good, or the plaintiff admits it to be so by replying to it, the truth of the plea is the only subject of question remaining, so far as the plea extends."

In the cause pending, complainant has replied. Counsel have discussed at some length the requisites of a good plea, the function and effect of the answer in support of the plea, and of the proof, but I do not consider it necessary to review their discussion. The whole subject is elementary, and is so ex-

haustively treated by Mr. Mitford in his chapter on the plea, which is authoritative, that in this jurisdiction there is no need to go beyond it. In fact, I consider it to be practically conceded by counsel, and it is unquestionably true, that the question of the existence (whether *de jure* or only *de facto*) of the alleged corporation called the Oxy-Hydrogen Company of the State of Delaware is at last properly before this Court, and that it is the only question before the Court that is seriously contested. Indeed, it is obvious from the citations, which I have made already from the pleadings, etc., that, if there be such a corporation as the Oxy-Hydrogen Company of the State of Delaware, it is a necessary party defendant.

The final argument made before me in February, 1899, was partly upon the question whether the corporate existence, thus put at issue, was merely its existence as a corporation *de facto*, or whether it was within the competence of this Court to pass also upon the question of its existence *de jure*, in determining whether or not it was a necessary party to the suit. At the same time counsel for the complainant laid the greatest stress upon their contention that the alleged Oxy-Hydrogen Company was not even a corporation *de facto*. In Thompson's Commentaries on the Law of Corporations the general rule is laid down, "that when a corporation has an existence *de facto* the rightfulness of its existence can only be questioned by the State, and cannot be questioned collaterally in a litigation between it and a private party," 1 *Thomp. Corp. sec.* 511, at least a hundred cases being cited in illustration and support. Judge Strong, subsequently one of the justices of the United States Supreme Court, spoke to the same effect in *Cochran vs. Arnold*, 58 *Pa. St.* 405, saying: "If there is anything settled, it is that the corporate existence of a corporation *de facto*, cannot be inquired into collaterally. Upon this subject the authorities are too numerous to admit of citation." It is only by *quo warranto* proceedings in the name of the State that its right to exist can be determined. This is indisputable, and is not denied by counsel for complainant, as a general proposition. The apparent exceptions, as in the cases where the aid of the courts is invoked by corporations

seeking to condemn land, or obtain certain other special rights, rest upon principles that in no way conflict with the general rule. The modern cases illustrating and discriminating these principles are almost innumerable, and counsel upon both sides have spared no pains in their examination, classification, and analysis, but to discuss the principles and distinctions to be deduced from the cases in advance of the careful examination of what is really presented by the indisputable facts in the cause before me would be to provide matters suitable for a special treatise perhaps, but irrelevant to the decision of the cause.

I will first consider, then, what are the grounds upon which the complainant contends that the alleged Oxy-Hydrogen Company of the State of Delaware is not a corporation, either *de facto* or *de jure*. The regularity and validity of the act of incorporation passed April 3, 1873, is not disputed, and, although the bill alleges that "your orator is informed, believes, and charges that no legal or valid organization has ever been effected," it is proved beyond a doubt by the answer in support of the plea and the proofs which give every step in detail, that a legal and vaild organization was effected under the charter. In fact, this objection has apparently been abandoned by complainant's counsel in the course of the argument. But it further appears in the answer, in support of the plea and defendants' proofs, that upon January 25, 1892, nine months after the filing of the bill, at a special meeting of the stockholders of the said Oxy-Hydrogen Company, it was resolved, by a unanimous vote of the stockholders of the said company, to take advantage of an act passed February 5, 1891, entitled "An act to revive private acts and extend the time of recording the same," which provided, *inter alia*, "that all unpublished acts heretofore passed which have not by special acts been repealed or become void by lapse of the time for which they were limited, be and the same are hereby specially renewed and re-enacted, and together with the provisions therein contained are respectively declared to be in full force henceforth for a like period, as that provided for in the original act," etc.; being 19 *Del. Laws* 26, *ch.* 15. It

further appears in the answer and proof, that upon the 28th day of January, 1892, the said company procured a certified copy of the act of incorporation under the great seal of the State of Delaware, under the hand of D. T. Marvel, then Secretary of State, after having given due notice of the intention of the said Oxy-Hydrogen Company of the State of Delaware to take advantage of the act above referred to, said notice being filed in the office of the Secretary of State, at Dover, and upon February 1, 1892, the said certified copy of the act of incorporation was duly recorded in the office of the Recorder of Deeds at Dover.

Upon these facts thus appearing in the defendants' answer in support of the plea, the complainant's counsel claim that the charter of the said Oxy-Hydrogen Company expired by the twenty years constitutional limitation, in 1893, and that it was not revived by the act above cited, passed February 5, 1891. No time was limited in the original act of incorporation of the said Oxy-Hydrogen Company; it was upon its face perpetual; but complainant's counsel argue that it expired by constitutional limitation in 1893, and was not renewed by the act of February, 1891, for two reasons:

First, because the act renewed and re-enacted the class of acts specified in it "for a like period as that provided for in the original act," and, no period being provided in the act incorporating the Oxy-Hydrogen Company, the renewing act could not apply to it.

Second, because the said renewing act was unconstitutional and void, inasmuch as it was a general incorporation law prohibited by the constitution, for it attempted to renew —that is, reincorporate—all corporations coming within the description of a class defined in the act.

One of the counsel for complainant, in one of his briefs, put his contentions upon this point as follows: "The Chancellor is not called upon in this case to determine any disputed question of fact, or any question of forfeiture or noncompliance with conditions, or any imperfection in organization or creation. The sole question presented is, could the Oxy-Hydrogen Company now be in existence under any claim made by

it, if it had complied with all conditions precedent to a proper organization? The authorities are a unit in deciding that there can be no *de facto* corporation when there is no possibility of the existence of a corporation. In such cases, corporate existence claimed can always be questioned in any proceeding."

Defendants' counsel contend, on the other hand, in reply to these arguments, that the constitutional limitation of twenty years must be read into the original act of incorporation, and therefore the renewing act does apply. At the same time they strenuously contend that the renewing act is not a general incorporation act, within the meaning of the constitutional provision, and is not unconstitutional.

Defendants further contend that, at the time of filing the bill, the contentions now made by the complainant could not have been made, inasmuch as the twenty years had not then elapsed from the time of granting the original charter, and that the decision of this Court must be made upon the status of the Oxy-Hydrogen Company of the State of Delaware at the time the bill was filed.

It is to be also noted that the complainant, at the final hearing, asked leave to file a supplemental bill, alleging, *inter alia*, the expiration of the charter by limitation of time.

Before proceeding to discuss all these conflicting views, and the reasons and authorities adduced in support of them, I will consider the one remaining contention of the defendants' counsel, which, if it be correct, disposes of most of the above noted facts and arguments, rendering them obviously immaterial and irrelevant to the question at issue. This contention of defendants' counsel is absolutely inconsistent with their other contentions, and, in brief, is that the act of incorporation of the Oxy-Hydrogen Company of the State of Delaware is an act for public improvement, and is therefore exempt from the constitutional limitation of twenty years, which applies only to corporations other than those for public improvement, and, there being no limitation of time expressed in the act itself, the charter is consequently a perpetual one.

*Section* 17, *art.* 2, *of the Constitution of* 1831, provides as follows:

"No act of incorporation, except for the renewal of existing corporations, shall be hereafter enacted without the concurrence by two-thirds of each branch of the legislature; and with the reserved power of revocation by the legislature; and no act of incorporation which may be hereafter enacted, shall continue in force for a longer period than twenty years, without the re-enactment of the legislature, unless it be an incorporation for public improvement."

Our courts have never been called upon to define "an incorporation for public improvement."

It is undoubtedly a term of very broad and vague significance, and, in the absence of judicial construction, a prudent lawyer would, in any case where a doubt could possibly arise, advise any corporation, which he might represent, to obtain an act of renewal from the legislature, rather than take any chance whatever of an adverse decision, the consequence of which would mean irremediable disaster to his clients. About ditches, canals, etc., there has been always such a consensus of opinion that renewal acts have rarely been sought; but, in the case of gas companies, the history of our legislation shows that, prior to the exceptional experience of the corporation whose status we are now considering, a specific renewal act was invariably obtained within the twenty years. This practice of those interested in gas companies, however, can in no way affect the question which the present case obliges me to consider and determine as a case of first impression, so far as our state tribunals are concerned; and in its determination all the provisions of the charter under consideration must, of course, be taken together, among them being the following: "And that the said corporation is hereby empowered to lay pipes and conductors with all the appurtenances thereto in any and all the roads, streets, highways and public grounds of the State of Delaware. And do all things necessary for the purpose of lighting the same, and all dwellings, stores, mines, tunnels and other places: provided, that public travel shall not be unnecessarily and unreasona-

bly obstructed thereby. And the said corporation shall put such streets, roads, highways and public grounds in as good condition as the same were before laying said pipes and erecting said posts."

There are many decisions in other states to which we may look in some degree for guidance, weighing the force of the reasoning and authority which have led other courts to conclusions which, although not authority in this State, yet cannot but have great influence, especially as they all agree; there being, so far as I have been able to ascertain, not one discordant case. An interesting one is that of *Bloomfield & Rochester Natural Gas Light Co. vs. Richardson*, 63 *Barb*. 437, decided by the Supreme Court of New York in 1872. The corporation undertook to conduct gas to the city of Rochester, a distance of thirty miles, and it became necessary to exercise the right of eminent domain, in order to acquire a right of way across private lands. The contention before the Supreme Court, by some of the landowners, was that this was not a public use, and private property could not be taken for it. Mr. Pomeroy, counsel for the landowners, argued at great length and with great earnestness that the carrying of gas could not be classed with the carrying of water, the drainage of swamps, the construction of canals, turnpikes, and railroads, as a public use; that it is perhaps more convenient to use gas than candles, or sperm oil, or even kerosene, but it is not a necessity, as is water. The Court held, that the conducting of illuminating gas, is such a public improvement, as to entitle a company, incorporated for that purpose, to be vested with the right of eminent domain. I will quote from the opinion as follows:

"It is unnecessary, in this case, to enter into any discussion as to whether the lighting of the dwelling of an individual, or any number of such dwellings, for the convenience of the occupant, can be considered a public use, since one of the objects of the act in question is to facilitate the lighting of the streets and public places. Is the lighting of the streets and public places a public benefit? The modern practice of the civilized world answers the question. But it is said that

a gas company already exists in Rochester, which is ready to supply all gas which may be needed. The same answer, in principle, might be made to almost any attempt to take any particular property for any particular public use. In almost all cases, it could be demonstrated that the particular method by which the legislature has attempted to authorize the public benefit to be conferred, or the particular property proposed to be taken, is not absolutely necessary to the accomplishment of the object. If the court can see that a public benefit is contemplated, the mode and method and means of producing this result must belong to the legislature, to be authorized in its discretion. It may be that the quality or price may influence the legislature to select one method over another. It must be a matter wholly resting in legislative discretion, or else the power is nugatory.

"Side by side with the gas mains of this company, leading to the city of Rochester, and, as was stated on the argument, at the very locality where the question in this case arises, are also placed the main conduits of the Rochester Waterworks Company, upon which the legislature conferred the right to conduct water from a distance, for the purpose of supplying the city with water, together with the power to take such private property as should be necessary in accomplishing the object. This Court has had occasion to confirm an appraisal of damages under the provisions of the waterworks charter, conferring the right to take private property.

"But it might well be alleged that Rochester might be supplied with water from other sources, and even within the city itself. The use of gas for illuminating purposes has become almost a necessity of modern civilization. The right to take private property of those who own the fee of the streets and highways may be absolutely necessary to the public enjoyment of the benefits of this invention, and we think there can be no doubt, upon principle and upon the adjudicated cases, that the conduction of illuminating gas, with such public objects as are specified in the act conferring the special powers upon this company, is within the category of those public improvements to enable which to be carried

out the legislature may confer upon the parties engaged in the enterprise the right to take the private property necessary to effect the object, upon making compensation according to the Constitution."

In the case of *New Orleans Gaslight Co. vs. Louisiana Light & Heat Producing & Mfg. Co.* 115 *U. S.* 650, 6 *Sup. Ct.* 262, decided in 1885, the question was upon the constitutional power of the legislature to grant an exclusive franchise to a gas company. Mr. Justice Harlan, delivering the opinion of the Court, said (*page* 658, 115 *U. S.*, and *page* 256, 6 *Sup. Ct.*):

"It is true, as suggested in argument, that the manufacture and distribution of illuminating gas, by means of pipes or conduits placed, under legislative authority, in the streets of a town, or city, is a business of a public character. Under proper management, the business contributes very materially to the public convenience, while, in the absence of efficient supervision, it may disturb the comfort and endanger the health and property of the community. It also holds important relations to the public through the facilities furnished, by the lighting of streets with gas, for the detection and prevention of crime. An English historian, contrasting the London of his day with the London of the time when its streets, supplied only with oil lamps, were scenes of nightly robberies, says that 'the adventurers in gaslight did more for the prevention of crime than the government had done since the days of Alfred.' 7 *Knight, c.* 21; *Macaulay, c.* 3. * * *

Authority for the position that the supplying of gas to a city and its people may become a public purpose is found in *New Orleans vs. Clark*, 95 *U. S.* 652. That case involved the liability of a municipal corporation upon coupon bonds issued to a company which had undertaken, for a valuable consideration, to light its streets with gas. Mr. Justice Field, delivering the opinion of the Court, said: 'A private corporation, as well as individuals, may be employed by a city in the construction of works needed for the health, comfort, and convenience of its citizens; and, though such works may be used by the corporation for its own gain, yet, as they advance

the public good, the corporation may be. properly aided in their construction by the city.' "

Counsel for defendants also cited *New Orleans vs. Rivers* 115 *U. S.* 674, 6 *Sup. Ct.* 273; *State vs. Milwaukee Gaslight Co.*, 29 *Wis.* 454.

It may be noted, in this connection, that the lighting of large cities by gas was becoming general about the time the constitution of 1831 was adopted. London was generally lighted by gas in 1814, and the streets of New York were first so lighted in 1823 and 1824.

The reasoning of the learned judges which I have cited is conclusive of the question, independent of any weight that the cases cited may have as adjudications. I am unable to conceive any intelligent construction of the phrase, "incorporation for public improvement," which will exclude a gas company empowered, as was the Oxy-Hydrogen Company of the State of Delaware, 'to lay pipes and conductors, with all appurtenances thereto, and to erect the necessary posts and lights in any and all the roads, streets, highways, and public grounds in the State of Delaware, and do all things necessary to the purpose of lighting the same." Therefore, the charter of the Oxy-Hydrogen Company being in terms perpetual, and as a corporation for public improvement being specially exempted from the constitutional limitation of twenty years, it is a perpetual charter, subject only to the constitutionally reserved power of revocation by the legislature. It follows, therefore, that the renewing act above recited has no application whatever to the Oxy-Hydrogen Company charter, and any further comment upon the arguments connected with it is unnecessary.

It may be argued, however, that, a charter being a contract between two parties, the acts of the stockholders of the said Oxy-Hydrogen Company, one of the parties already set forth, declaring their acceptance of an alleged renewing act, and attempting to do all the acts and things necessary to obtain the benefit of its provisions, amount to a surrender or forfeiture of the existing grant of a perpetual charter. But whatever may be the force of that contention, it is a question

that is not before me. The only way to raise it is by *quo warranto* proceedings in the name of the State, as it is one of the settled principles of corporation law that the State alone can proceed to exact a forfeiture.

An act was duly passed in 1873, incorporating the Oxy-Hydrogen Company of the State of Delaware. That act contained no express limitation of time, and was on its face perpetual. It was an incorporation for public improvement, and therefore, in terms, exempted by the Constitution from the limitation of twenty years applicable to other corporations. A regular organization and user followed, and no objection remains, which, upon any tenable theory, would be within the competence of this Court to pass upon. With subsequent inconsistencies in the conduct of its stockholders, and the position assumed by the company and its counsel, I have nothing to do. For the purposes of this suit, the Oxy-Hydrogen Company of the State of Delaware has been shown to be an existing corporation of this State, and a necessary party. Therefore the bill is fatally defective, for want of a necessary party.

It is the practice of the Court of Chancery in such cases not to dismiss the bill, but to give the complainant leave to amend upon the payment of costs. Chancellor Kent, in *Cook vs. Mancius*, 3 *Johns. Ch.* 427; Chancellor Bates, in *Sattherwait vs. Marshall*, 4 *Del. Ch.* 337.

I shall let the cause stand over, with liberty to the complainants to amend their bill by making the Oxy-Hydrogen Company of the State of Delaware a party, and it must be on the payment of the costs of the pleas and subsequent proceedings. It is evident that this involves the refusal of leave to file the supplemental bill which was presented.